(No. 13339.—Appellate Court reversed; circuit court affirmed.)
The DeLong Hook and Eye Company, Appellee, *vs.* The Hump Hairpin Manufacturing Company, Appellant.

*Opinion filed April 21, 1921.*

1. Patents—*after expiration of patent the public may use name of patented article.* At the expiration of a patent the public acquires the right to make the patented article and to use the name which it has acquired even though the name is that of the patentee, subject to the requirement that such precaution shall be taken, by furnishing unmistakable information as to the manufacturer, as will prevent deception of the public.

2. Trade-marks—*mere adoption and use of words does not give exclusive right to their use.* The mere adoption and use of words in advertisements, circulars and price lists and on signs and stationery give no exclusive right to their use, and the use of the word "hump" to designate a particular kind of hook and eye does not give an exclusive right to the use of the word as a trade-mark for other articles made by the same manufacturer.

3. Injunction—*right to a trade-mark is not essential to enjoin unfair competition.* To maintain a bill to enjoin unfair competition it is not necessary that a specific trade-mark or exclusive right of the complainant shall have been infringed, but the question is whether the marks and devices of the defendant are of such a character as to deceive purchasers, with the result that the goods of the defendant are palmed off as the goods of the complainant.

4. Same—*when the use of descriptive words may be enjoined.* Where a manufacturer or merchant has used a mark, word or phrase in such a way that it has become identified with his business and the articles of his manufacture, another person will not be permitted to use the same mark, word or phrase so as to lead purchasers to believe they are buying the goods of the former; and even though the word used is geographical or descriptive, so that it cannot be monopolized as a trade-mark, its use may be enjoined unless accompanied by such information and precautions as unmistakably distinguish the article and prevent deception.

5. Same—*when use of word "hump" to designate kind of hairpin cannot be enjoined.* The use of the word "hump" in the name of a company manufacturing hairpins and to designate the kind of hairpin manufactured cannot be enjoined by another company which has been using the word "hump" to describe a certain kind of hook and eye but has not used the word generally to describe all

the articles manufactured by it, including hairpins, where the evidence fails to show that the use of the word "hump" by the complainant company has acquired a secondary meaning in the trade indicating that company and all the articles of its manufacture.

6. SAME—*burden is on complainant to show use of word has acquired trade meaning.* In a suit to enjoin the use of a word to describe an article manufactured by the defendant the burden is on the complainant to prove that previous use of the word in its business has given it a secondary meaning referring to the complainant corporation and all articles manufactured by it, so that the use of the word by the defendant results in passing off its goods as the goods of the complainant.

7. SAME—*fraud is the essence of unfair competition.* Fraud is the essence of unfair competition, and equity will not enjoin the use of a word to describe a manufactured article if the public is not deceived as to the origin of the article and if there are no false representations.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

JUDAH, WILLARD, WOLF & REICHMANN, and FRANK L. BELKNAP, for appellant.

. RUSHMORE, BISBEE & STERN, and MOSES, ROSENTHAL & KENNEDY, (CHARLES E. RUSHMORE, and GEORGE N. HAMLIN, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

The DeLong Hook and Eye Company filed a bill in the circuit court of Cook county against the Hump Hairpin Manufacturing Company to enjoin the latter from using the word "hump" in the marketing of its hairpins and in its corporate name, upon the ground that the use of such word in the manner the defendant was using it constituted unfair competition with the complainant. A hearing upon the pleadings and evidence resulted in a decree dismissing the bill for want of equity, which the Appellate Court reversed, remanding the cause, with directions to enter a

decree in favor of the complainant in accordance with the views expressed in the opinion of the court. The defendant having obtained a certificate of importance has appealed from the judgment of the Appellate Court.

The claim of the appellee is based upon the adoption of the word "hump" and its continued use by it and its predecessors as a trade-mark since 1891, and the claim that this word has been so used and advertised in connection with all the products of the appellee, which included hairpins and other like articles of women's apparel known as notions, as to have acquired a special significance in the minds of retailers and of the purchasing public as a trade name, which, used in association with hairpins, indicates the appellee as the manufacturer thereof.

The appellee is a corporation organized under the laws of Pennsylvania, having its principal office in Philadelphia, and is engaged in the manufacture and sale of hooks and eyes, hairpins, buttons, safety pins and toilet pins. In 1889 the partnership of Richardson & DeLong Bros. was organized for the purpose of manufacturing and selling hooks and eyes under letters patent issued to Frank E. DeLong for "an improvement in hooks or fasteners for garments, consisting of a hook proper and a shank formed of substantially parallel bars and a curved spring tongue having its free end forming a loop coincident with the bend of the hook, said tongue and loop being intermediate of said bars and having the central bar of the shank bent forward out of the plane of the other bars, acting as a spring to prevent accidental disengagement of the hook and eye members one from the other and permitting of easy engagement of the hook with the eye or of its disengagement therefrom by the wearer of the garment to which the hook and eye are attached." The partnership commenced the manufacture of hooks and eyes under the letters patent in March, 1890. In 1891 they gave to the bend and central shank the name "Hump," and adopted that word together with the

expression, "See that Hump?" which phrase was used in connection with a picture of the hook and eye and an indicating line running from the word "See" to the hump, as a trade-mark for hooks and eyes, which they caused to be registered in the patent office on April 19, 1892, and on August 29, 1905, and on August 7, 1906. A corporation of the same name as the appellee was organized under the laws of West Virginia in 1890, which took over all the business of the partnership, and in 1907 the appellee was organized in the State of Pennsylvania and has succeeded to all the business, property and rights of both the partnership and the West Virginia corporation. The appellee and its predecessors have been continuously engaged in the manufacture and sale of hooks and eyes of the character described in the DeLong patent since 1890, though the patent expired in 1906, and since that time such hooks and eyes have been manufactured and sold by others as "Hump hooks and eyes." In 1894 the appellee's predecessor engaged also in the manufacture and sale of hairpins, making the ordinary hairpin with two prongs, and it and the appellee, its successor, have ever since continued in that business. These hairpins were never known or advertised or sold as "Hump hairpins." The trade-mark "Hump," or "See that Hump?" was never attached to the packages in which they were sold. They were sold under separate names, as the "Cupid Hairpin" and "Diana Hairpin" and "DeLong Hairpin."

In December, 1903, Sol. H. Goldberg obtained letters patent on a new three-pronged hairpin invented by him, the essential characteristic of which was a central third prong considerably shorter than the outer prongs, which was twisted and provided with a hump by bending the wire. In November, 1904, Goldberg caused to be registered in the patent office as a trade-mark for hairpins, the words, "It locks the locks," and in April, 1907, as another trade-mark for hairpins, the words, "Hump hairpin locks the locks." These patents and trade-marks were assigned to

the Hump Hairpin Company, a corporation organized under the laws of the State of Illinois, and by it were assigned to the Hump Hairpin Company, a corporation of the State of Maine, and later were assigned to the appellant, the Hump Hairpin Manufacturing Company, a corporation of the State of West Virginia, which has succeeded to all the rights of Goldberg and the two preceding corporations in the patent and trade-marks.

In January, 1909, the Hump Hairpin Company of Maine applied for a trade-mark for hairpins, consisting of the words "The Hump" printed above the likeness of a camel bearing a hairpin on its back. The DeLong Hook and Eye Company filed its opposition in the patent office, where it was sustained, but on appeal to the Supreme Court of the District of Columbia the order was reversed and the trade-mark was ordered registered. The Maine corporation, the Hump Hairpin Company, in 1910 established a plant in Chicago for the manufacture of hairpins under the Goldberg letters patent, and in 1914 the appellant was organized and took over all the assets and the business of the Maine corporation. In January, 1916, it entered on a large scale upon the business of manufacturing and selling hairpins in the city of Chicago. Soon after, on April 26, 1916, the appellee filed the bill in this case.

From the time the words "Hump" and "See that Hump?" were adopted as a trade-mark for hooks and eyes the predecessor of the appellee began advertising its products very extensively, and this advertising has been continuous since that time. The advertising was carried on by publication in magazines, trade journals, newspapers and circulars, on cards placed in street cars, on paper bags, fences and signboards, and was attended with many ingenious and novel devices. The most striking feature of the advertising was the trade-mark and the name of the De-Long Hook and Eye Company. From time to time various other articles began to be manufactured and sold by

the DeLong Hook and Eye Company, such as press buttons, safety pins and toilet pins. These articles all belong to a class of merchandise known as "notions," and as the manufacture of each new article was begun it became a part of the advertising scheme and its picture was a part of the presentation of the business of the company. In February, 1916, the scheme of advertising was changed, so that from the picture of each article grouped around the pictured hook and eye with the words, "See that Hump?" a line was drawn to the hump. There is evidence that this change was determined upon in the latter part of 1915, and paper bags for the use of the trade in the sale of notions were distributed before Christmas, 1915, though they did not become a part of the advertising scheme until February, 1916.

The appellee's patent having expired and the hooks and eyes manufactured by it under the patent having acquired the name of "Hump hooks and eyes," by which they are generally known, every person has the right to make and sell hump hooks and eyes under that name, provided he does nothing tending to deceive the public into believing that his hump hooks and eyes were manufactured by the appellee. At the expiration of the patent the public acquires the right to make the patented article and to use the name which it has acquired, even though the name is that of the patentee, subject to the requirement that in using the name such precaution shall be taken as will prevent deception of the public by furnishing unmistakable information as to the manufacturer. *Singer Manf. Co.* v. *June Manf. Co.* 163 U. S. 169.

Since appellee never attached the trade-mark "Hump," or "See that Hump?" to the hairpins which it manufactured and sold, it acquired no right in those words as a trade-mark for hairpins. The mere adoption and use of words in advertisements, circulars and price lists and on signs and stationery give no exclusive right to their use. (*Hazelton*

*Boiler Co.* v. *Hazelton Tripod Boiler Co.* 142 Ill. 494; *Bolander* v. *Peterson,* 136 id. 215; *Candee, Swan & Co.* v. *Deere & Co.* 54 id. 439.)   Therefore the appellee does not base its claim for an injunction upon any application of the law of trade-marks but only upon the claim of unfair competition.   For the latter claim no trade-mark right or right to the exclusive use of the words, marks or names by which the goods sold are called is essential.   In such a case the question is whether the defendant's use of the words or marks complained of is such as is likely to deceive purchasers from the defendant into believing that they are buying the complainant's goods.   It is not necessary that a specific trade-mark or exclusive right of the complainant should have been infringed, but the question is whether the marks and devices of the defendant are of such a character as to deceive purchasers, with the result that the goods of the defendant are palmed off as the goods of the complainant. *McLean* v. *Fleming,* 96 U. S. 245.

Where a manufacturer or merchant has used a mark, word or phrase in such a way that it has become identified with his business and the articles of his manufacture, another will not be permitted to use the same mark, word or phrase so as to lead purchasers to believe they are buying the goods of the former.   This rule applies even though the word, name or phrase under which the reputation of the merchant or manufacturer has been acquired is geographical or merely descriptive of the character or quality of the articles or the place of their manufacture or sale, and is therefore incapable of being monopolized for use as a trade-mark.   The question is one of common honesty, and the courts require the observance of such a standard as will protect the business, the market and the reputation of a dealer against all acts which tend to deceive the public into believing that the goods of another are his goods and to pass them off as such.   A merely descriptive term or the name of a person or place may have become associated

with a particular kind of goods or the product of a particular manufacturer in such a way that merely attaching the word to an article of the same kind would amount to a misrepresentation as to the origin of the article. In such case, while the use of the word cannot be prohibited it may be enjoined unless accompanied by such information and precautions as will unmistakably distinguish the article from the goods of the original manufacturer or vendor and will prevent deception of purchasers. *Elgin National Watch Co.* v. *Illinois Watch Case Co.* 179 U. S. 665; *American Waltham Watch Co.* v. *United States Watch Co.* 173 Mass. 85; *Cohen* v. *Nagle,* 190 id. 4.

The Hump hairpin of the appellant is the only hairpin of that name which has ever appeared on the market. So far as appears from the evidence it is the only three-pronged hairpin which has ever appeared and the only hairpin having a hump. No one else manufactures a similar hairpin. There is no competition between Hump hairpins or between three-pronged hairpins. There is competition between the Hump hairpin manufactured by the appellant and the ordinary hairpins manufactured by the appellee, and the question is whether the use of the word "Hump" in the appellant's name and the name of its product tends to deceive the public into believing that its product is the product of the appellee. The two kinds of hairpins are visibly and palpably different. They cannot be mistaken the one for the other, and a person wishing to buy a "DeLong" or "Cupid" or "Diana" hairpin could not possibly be deceived by the appellant's use of the word "hump" into buying a Hump hairpin.

Since the appellee has no trade-mark in the word "hump" it has no exclusive right to the use of the word. Since the word in its primary sense is descriptive of the appellant's manufacture, the appellant has a right to use the word to describe its goods and can be restrained from doing so only in case it appears that the word has come to

have a secondary or trade meaning,—that is, that all notions bearing the name "hump" are of the appellee's manufacture. Even in such case the use of a descriptive or geographical word, in its primary sense, cannot be wholly enjoined. Whether the appellee has a trade-mark in the name or not, whether the word is capable of adoption as a trade-mark or not, if, in fact, that name means in the trade the appellee or the appellee's goods, the appellee has a right to have the appellant enjoined from using that name in selling its goods so as to mislead buyers into believing that the appellant's goods are of the appellee's manufacture. The only question of proof is the trade meaning of the name.

The right of the appellant to manufacture hairpins, whether the ordinary kind or under its own patent, cannot be denied. The word "hump" is to some extent descriptive of the patented hairpin, and the appellant has the right to use it for the purpose of describing its hairpins by reference to the hump, provided it does so in such a way as not to misrepresent its origin or cause confusion with the appellee's hairpins. The word is likewise descriptive of the DeLong hook and eye, though not descriptive of the DeLong hairpin or of any hairpin but the appellant's. The only basis upon which relief can properly be granted to the appellee is that the word "hump" has acquired such a meaning in the trade or with the public as to indicate the appellee as the manufacturer of any article or class of notions to which it may be attached. The appellee never used the word in such a way as to apply to any of the notions of its manufacture except the hook and eye. By nature it was not applicable to any other of such articles and the appellee did not attempt to make any arbitrary connection,—certainly not before December, 1915, only two months before the appellant inaugurated the sale of its product on a large scale. The trade-mark was designed for the hook and eye, which was originally the sole product of the appellee's manufacture. The hook and eye with the hump and the indi-

cating line from the words to the hump of the hook were a part of the trade-mark, and, together with the words "The DeLong patent hook and eye," appeared in all the advertising. When the hairpin was added to the appellee's manufacture the advertising continued of the same character, except that there were added the words, "By the makers of the Cupid hairpin," with the design of a Cupid hairpin. The trade-mark designated with particularity the DeLong hook and eye, which, as each advertisement stated, was by the makers of the Cupid hairpin. Advertisements of the Cupid hairpin were also published, consisting of fanciful verses, each concluding with the statement, "It's in the twist." These advertisements bore the design of a cupid or cupids, together with the words "Cupid hairpin," and there was added to each the words, "By the makers of the famous DeLong hook and eye." They bore no reference to the hump. As other articles of manufacture were developed, a representation of the article, bearing beside the name "DeLong" some characteristic word or expression, was added to the card or other form of advertisement, as in the case of the press buttons, "The world's flattest fastener;" safety pins, "Strong, easy-working; Rust? Never!!"; hairpins, "The package with the white band;" hook and eye tape, "Look for the tags." Each of the advertisements was of all the articles which the appellee was at the time producing and bore a representation of each article. In each case, beside the characteristic words mentioned, the article represented was accompanied by the name of the article, as "DeLong press button," "DeLong safety pin," "DeLong hairpin," except in the case of a hook and eye which the appellee manufactured and for which it had a separate trade-mark, "See that nub?" with a line connecting it with the hook and eye. This article was called the "Nub hook and eye," and the name "DeLong" was not mentioned in connection with it. Thus, while the word "hump," or the words "See that Hump?" appeared in each

advertisement, they were used to designate particularly the hook and eye, in the same manner as the words "The world's flattest fastener" were particularly applicable to the press buttons. The only word which appears to characterize in general all of the articles of the appellee's manufacture is the word "DeLong," which is found in connection with each article except the Nub hook and eye. There was therefore no appropriation by the appellee of the use of the word "hump" to designate, in general, the articles or notions of its manufacture. There is very slight evidence of such appropriation of the name by the trade or the general public. The appellee never called itself the "Hump" or the "Hump Company" but always the "DeLong Hook and Eye Company," and it always applied the name "DeLong" to the articles of its production. Evidence is lacking that either the trade or the general public gave to the appellee or its articles, other than hooks and eyes, the name "Hump" or called the company by that name.

The burden of proof of the secondary meaning of the hump as referring to the appellee is upon the appellee and must be sustained by substantial evidence sufficient to show that the use of the word by the appellant will result in passing off its goods as the manufacture of the appellee. The record does not indicate that the appellee was commonly known as the Hump Company, or was called by that name by its officers, employees, customers or other persons. It does not show that its manufactures were commonly known and called by the name of "Hump" except in the case of the hook and eye, which was known as the Hump hook and eye, or the DeLong hook and eye. While the Hump hook and eye constituted a prominent feature of all the advertising, it is not shown to have been associated with the appellee's other products so as to designate them or the company itself. There is very little evidence that anyone ever purchased Hump hairpins under the belief that they were manufactured by the appellee. There is evidence

that some orders for Hump hairpins were sent in to the appellee, and some inquiries were made of the appellee's salesmen and by correspondence in regard to the Hump hairpin by persons who assumed they were made by the appellee from the appellee's use of the hump in connection with the hook and eye. Sometimes a salesman of the appellee upon visiting the store of a customer would be spoken of as the Hump man. An exposition was held in Toronto, Ontario, in 1916, several months after the bill was filed in this case, at which the appellee, as well as many other manufacturers from the United States and Canada, exhibited its products. The sign of the appellee's exhibit consisted of the name of the appellee in gilt letters over the top of the booth containing the exhibit. The booth was enclosed, except the front, and the back of it was constructed in large panels showing the various articles of the appellee's manufacture. The most pronounced feature on the back and sides was the words, "See that Hump?" in very large letters. Women passing the booth would say that there were the makers of the new hairpin that was advertised, and would ask to see the new hairpin, or the new Hump hairpin, which they had seen advertised. Some witnesses testified that the word "hump" suggested to their minds the appellee because of its use of the word in its trade-mark, and that their first impression on seeing the Hump hairpin advertised was that it was one of the appellee's products. This was, however, a momentary thought or impression arising from mere carelessness. There was no difficulty in discovering, by simply looking at the appellant's packages or advertising, who was the manufacturer. The package in which the appellant's hairpin was sold was entirely different from the appellee's. The appellant's name plainly appeared as the manufacturer, and so it did in all advertisements of the Hump hairpin. Even a casual observer would readily distinguish the appellant's packages and advertisements from those of the appellee. If purchas-

ers were mistaken it was not because they were deceived by false representations, and equity will not enjoin against telling the truth. *Delaware and Hudson Canal Co.* v. *Clark,* 13 Wall. 311.

The essence of unfair competition is fraud. It is said in *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict,* 198 U. S. 119, that it "consists in the sale of the goods of one manufacturer or vendor for those of another, and if defendant so conducts its business as not to palm off its goods as those of complainant the action fails. * * * 'A court of equity will not interfere when ordinary attention by the purchaser of an article will enable him at once to discriminate the one from the other.' * * * 'Even in the case of a valid trade-mark, the similarity of brands must be such as to mislead the ordinary observer.' "

In regard to the evidence as to orders attempted to be given to the appellee for the Hump hairpin through its salesmen and correspondence, it may be said as was said of similar evidence in the case of *Coats* v. *Merrick Thread Co.* 149 U. S. 562: "A large number of witnesses were sworn upon this subject whose testimony tended to show that they had either purchased themselves or seen others purchase the defendant's thread supposing it to be Coats'. This testimony was not, however, wholly satisfactory and threw but little light upon the controversy. There is, no doubt, a general resemblance between the heads of all spools containing a black and gold label which might induce a careless purchaser to accept one for the other. Defendants, however, were not bound to any such degree of care as would prevent this." In *Centaur Co.* v. *Marshall,* 97 Fed. 785, it is said: "The law imposes no duty upon the appellee to see to it that the careless and indifferent know that the castoria which they buy is made by the appellant and not by another. They discharge their full duty to the appellant if they so dress their product that one who seeks to ascertain whose manufacture it is can readily learn,

by a reasonable examination of their label, whether it is made by the appellant or by themselves." In *Ball* v. *Siegel,* 116 Ill. 137, which was a bill in equity in which the complainants, who were the manufacturers of "Ball's Health-preserving Corset," sought an injunction against the defendants, who were engaged in selling a similar corset under the name of "Schilling's Health-preserving Corset," the court, after stating that "the only question is whether appellees were by devices and false representations, as charged in the bill, selling or causing to be sold their corset when the purchasers were desiring to purchase, and supposed they were purchasing, appellants' corset," said: "But the court is not bound to interfere where ordinary attention will enable purchasers to discriminate between the trade-marks used by different parties." It was further said that "to entitle a complainant, in cases of this character, to the relief here sought, the right must be clearly established by the evidence."

The evidence fails to show that the word "hump" has acquired a secondary meaning in the trade indicating the appellee or the appellee's manufactures, and it does show that the appellant, in the use of a different form of wrapper in the sale of its hairpins and in the plain indication by the use of its name on the wrapper that the hairpins were manufactured by the appellant and not by the DeLong Hook and Eye Company, exercised due care to prevent the deception of purchasers of its hairpins.

Some errors alleged by the appellee to have been committed on the trial have been argued as reasons why the decree of the circuit court should have been reversed by the Appellate Court, but in the view which we have taken of the evidence these errors are not material to be considered.

The judgment of the Appellate Court will be reversed and the decree of the circuit court dismissing the bill will be affirmed.        *Judgment of Appellate Court reversed.*
*Decree of circuit court affirmed.*

The following additional opinion was also filed:

Per Curiam: We have carefully re-considered all of the facts and the briefs and arguments submitted by the parties to this suit, including those filed after appellee was granted a rehearing. We have again arrived at the conclusion that in the foregoing opinion the issues are correctly and properly decided, and it is therefore re-filed as the decision of the court. We are moved to this conclusion mainly from the consideration of the facts that appellee never at any time advertised, manufactured or sold any Hump hairpins or hairpins made with a hump, and never used the words "hump," or "See that hump?" as a trade-mark or trade name on its packages of hairpins before appellant had begun the advertising and sale of its hairpins. The conclusion that the public was deceived and appellee thereby damaged in the sale of its hairpins by a similar "dressing-up" of hairpins by the appellant or by the employment by it of the word "hump" in its corporate name and in its trade-mark, which was registered after being unsuccessfully opposed by appellee, we think is not warranted by the evidence. The packages of appellant were all dissimilar to those of appellee and were of various colors and sizes. The only justifiable reason for anyone reaching the conclusion that appellant's hairpins were manufactured by appellee was based upon the fact that appellee made Hump hooks and eyes,—entirely different articles,—and advertised and sold them under their trade-mark aforesaid, and not by reason of the fact that appellee had ever advertised and sold Hump hairpins or similar hairpins. The public was in every advertisement by appellant, on its packages and elsewhere, given the information that its hairpins were manufactured by it. Under the law appellant had a right to manufacture and sell its hairpins, the patent on appellee's hooks and eyes (the only article manufactured by it and advertised as having a hump) having expired. The only charge against

appellant is that it was guilty of unfair competition by palming off its goods as those of appellee to the damage of the latter, and that charge is not sustained. If appellee was damaged by appellant's competition it was just such damage as all other manufacturers of hairpins without a hump would incur. Having failed to show damage by unfair competition as charged, appellee has failed to sustain its bill.