**ELASTIC STOP NUT CORPORATION OF AMERICA v. GREER.**

No. 43–C–435.

District Court, N. D. Illinois, E. D.

May 1, 1945.

364

Harold W. Norman (of Zimmerman and Norman), William T. Woodson (of Rogers, Woodson & Rogers), and Curtis F. Prangley (of Moore, Olson & Trexler), all of Chicago, Ill., and Hamilton Hicks, of New York City, for plaintiff.

Henry Blech (of Blech and Herson) and Enright & Enright, all of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

This is an action brought by the Elastic Stop Nut Corporation of America, a New Jersey corporation, against Fredric Greer, a citizen of Illinois, doing business as Fredric Greer Company.

Both parties are engaged in the manufacture of self-locking nuts. The plaintiff has been so engaged since 1934 and the defendant since 1942. The plaintiff designates its self-locking nuts as "Elastic Stop Nuts" and as "Stop Nuts." The products of both parties are practically identical in shape, form and appearance and contain a fibre insert which is the means by which the nut is locked onto the bolt. The natural color of the fibre is gray.

To provide a visual identification for the nuts of its manufacture, plaintiff uses a red fibre for the insert and has extensively advertised its self-locking nuts with illustrations prominently displaying the red ring or collar of the nut, and in such advertisements refers to such identification as "nuts with the red collar." The color is nonfunctional.

The defendant uses in the manufacture of its self-locking nuts a red-colored fibre insert identical in color to the red insert used by plaintiff in its self-locking nuts.

Defendant uses illustrations of a self-locking nut prominently displaying the red collar of the nut in his advertising and on his letterhead and asserts to the trade that his product can be "identified by the red center." Defendant in advertising his product also uses the terms "Elastic Stop Nuts" and "Stop Nuts."

The plaintiff charges defendant with unfair competition and seeks to enjoin the defendant from using the terms "Elastic Stop Nuts" and "Stop Nuts" and from displaying a self-locking nut with a red collar in connection with the advertising and sale of his products and from using a red fibre insert in his self-locking nuts. Plaintiff alleges that the defendant deliberately copied its product in an attempt to confuse the trade and to put out a product so similar, so identical to its product that a purchaser would be confused as to which product he was buying, and that the product of the defendant would be mistaken for the product of the plaintiff.

Defendant answers that he manufactures in accordance with the teachings of an expired patent of the plaintiff and that he went into the production of this particular item largely at the request of the United States Army Air Force due to the fact that plaintiff's stock being more than twenty-five per cent foreign owned made it impossible for the plaintiff to conduct business with the United States Government.

The defendant also filed a counter-claim based upon a patent for an attachable nut issued to Andrew Sande on May 28, 1929, No. 1,714,520, which was assigned to the defendant on February 1, 1945, and which defendant claims is being infringed by plaintiff in some of the nuts of its manufacture.

The plaintiff has proved, in my opinion, an attempt on the part of defendant to procure a license from the plaintiff prior to the expiration of the Rennerfelt patent which the defendant contends is the controlling patent in plaintiff's manufacture. The evidence shows that the defendant's efforts in this regard included threatening public disclosure of the fact that plaintiff's patent would soon expire and that if this became known to the trade that great competition would result.

There is also some evidence of the desire on the part of the defendant to enter into a price-control arrangement with the plaintiff if the plaintiff would license the defendant.

The proof further shows that plaintiff refused to license the defendant and that thereupon defendant commenced to manufacture a product which in style, appearance, dress and function was an exact copy of the product of the plaintiff.

The evidence is further clear that the defendant used the identical color for the fibre insert that the plaintiff was using and referred to its product as "Stop Nuts" and "Elastic Stop Nuts".

The evidence further clearly shows that the trade generally was confused thereby, thinking that the product of the defendant was the product of the plaintiff.

Defendant failed to prove his contention on the foreign ownership of the plaintiff and subsequently abandoned it during the trial.

There is some evidence, although I think it is far from conclusive, that the United States Army Air Force at least participated in the defendant's deliberations prior to his entry into the business of the manufacture of what we know in this lawsuit as "Stop Nuts".

The evidence establishes that practically all of this product produced by the defendant was used by the United States Army Air Force.

■ I will first consider the unfair competition part of this case. Counsel for defendant contends that in this matter the law of Illinois governs. With that I agree.

■ Counsel further contends, however, that in order to prove a case of unfair competition, under the law of Illinois there must be evidence of actual palming off of the goods of the accused as the goods of the accuser. That, I think, may formerly have been the law. I do not think it is the law in Illinois today in view of the decision of Mr. Justice O'Connor in the case of Lady Esther, Ltd., v. Lady Esther Corset Shoppe, Inc., 317 Ill.App. 451, 46 N.E.2d 165, 167, 148 A.L.R. 6, and in view of the general broadening of the theory of unfair competition in this State following the weight of authority throughout the United States.

The proof in this case does not establish a palming off of the goods of the defendant as the goods of the plaintiff. However, I find that such actual palming off, even in the case of competitors, is no longer required by the Illinois law to establish a case of unfair competition. It is sufficient to warrant injunctive relief if there is likelihood of confusion in the trade.

As stated by Justice O'Connor in the Lady Esther case, supra:

"Counsel for defendant contends that 'Illinois adheres to the "palming off" rule in case of unfair competition. Where there is no competition, there can be no "palming off." Since defendant was not in competition with the plaintiff, in any manner whatsoever, plaintiff was not entitled to the injunction prayed for in its complaint.' "

Referring to four Illinois cases, Stevens-Davis Company v. Mather & Co., 230 Ill. App. 45; DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co., 297 Ill. 359, 130 N.E. 765; Johnson Manufacturing Company v. Alfred Johnson Skate Company, 313 Ill. 106, 144 N.E. 787; and Ambassador Hotel Corporation v. Hotel Sherman Company, 226 Ill.App. 247, cited by the defendant in that case, the court continues:

"Without stopping to analyze the four cases, we think it sufficient to say that an examination of them discloses the fact that in each there was direct competition between the parties in the business each was conducting—plaintiff and defendant being engaged in the same line of business—and therefore the 'palming off' rule was applicable. The holding in those cases, that where there was direct competition between plaintiff and defendant there must be a 'palming off' to warrant relief, is far from saying that courts will not grant *injunctive* relief where the defendant's conduct is likely to cause confusion of the traders so that the public believes or is likely to believe that the goods of the defendant are the goods of the plaintiff, or that the plaintiff is in some way connected with or is a sponsor of the defendant."

In my opinion the foregoing constitutes a departure from what was previously regarded as the law in Illinois. I doubt that what was previously regarded as the law in Illinois, the requiring of proof of "palming off" as between competitors for granting of *injunctive* relief was ever actually the law. It was instead an erroneous interpretation of the four cases above referred to which unfortunately was generally accepted by the Courts and Bar of Illinois. In the Lady Esther case these four previous cases are for the first time clearly analyzed and explained by Justice O'Connor who correctly reasons from the opinions of these four cases, that where in a given case it can be shown that such confusion exists among the public or the traders in a product that they are likely to believe that the goods of the

defendant are the goods of the plaintiff, or that the plaintiff is in some way connected with or is a sponsor of the defendant a sufficient basis has been established for the issuance of injunctive relief by a court of equity in a suit for unfair competition.

■ Counsel for defendant in the case at bar has also argued the absence of proof of fraud as formerly associated with cases of unfair competition. In disposing of this contention adversely to defendant I adopt and quote a further paragraph from the opinion of Justice O'Connor in the Lady Esther case, wherein he cites the case of Vogue Company v. Thompson-Hudson Company, 6 Cir., 300 F. 509, as follows:

"Another change that has come with the realization of this broad basis for 'unfair competition' is the elimination of the requirement of 'fraud'. Although the law of unfair competition has evolved through the application of principles of fraud, with the result that, in this country at least, there will be no relief where the defendant has acted in good faith toward both the plaintiff and the public, yet a realization that the true basis of equity's interference in such cases is not fraud but the protection of good-will has caused many courts to question the propriety of inquiry into the defendant's mental state."

In the instant case we clearly have a question of good-will. Is the plaintiff's good-will in trade injured by the activities of the defendant? In my opinion, it is.

As ably stated by Justice O'Connor in the Lady Esther case:

"Our Supreme Court cites the Vogue, Aunt Jemima and Ward Baking Co. cases with approval in Investors' Syndicate v. Hughes, 378 Ill. 413, 38 N.E.2d 754, where Mr. Justice Stone in speaking for the court said, ([378 Ill.] p. 422, 38 N.E.2d 758): 'Plaintiff cites numerous cases where the courts have refused to consider the question of fraud or imposition on the public, in controversies between hostile corporations over the use of a name. In such cases it has been held that the injunctive relief sought was based upon the protection of property rights of the plaintiff, and that an injunction will not issue unless it is made to appear that the proposed use of the name will result in injury to the complainant. (Citing 3 Illinois cases.) Even in injunction cases between competing corporations the trend of decision is to place less emphasis on competition and more on confusion, as is evidenced by the following cases: Vogue Company v. Thompson Company, 6 Cir., 300 F. 509, Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407 [L.R.A.1918C, 1039]. As was said in Ward Baking Co. v. Potter-Wrightington, 1 Cir., 298 F. 398, "The test should be whether the public is likely to be deceived." '

\*　　\*　　\*　　\*　　\*　　\*

"And the good-will of plaintiff, which it had built up at great expense over a period of years, would be whittled away. Courts of equity ought not to be so feeble as to be unable to prevent this."

In the case now before this Court, we have proof of the good-will built up by the plaintiff over a period of many years and of the general acceptance by the trade of the style, dress, name and appearance of plaintiff's product as indicating it to be the plaintiff's product. These valuable assets of the plaintiff are without right suddenly pre-empted by defendant in his copying of the style, dress and nomenclature of plaintiff in the marketing of a new product.

Counsel for defendant has cited DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co., 297 Ill. 359, 130 N.E. 765, among other cases in support of his position that plaintiff should have no exclusive right to the name describing its product.

[4] However, in referring particularly to the descriptive nomenclature by which the product is indicated, the Supreme Court of Illinois, in the DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co. case, 297 Ill. at page 365, 130 N.E. at page 768, said:

"A merely descriptive term or the name of a person or place may have become associated with a particular kind of goods or the product of a particular manufacturer in such a way that merely attaching the word to an article of the same kind would amount to a misrepresentation as to the origin of the article. In such case, while the use of the word cannot be prohibited, it may be enjoined unless accompanied by such information and precautions as will unmistakably distinguish the article from the goods of the original manufacturer or vendor and will prevent deception of purchasers."

■ Here is a principle which I think may well be applied to the evidence in this case. Counsel for defendant maintains that the term "Stop Nut" (any claim to the right to use "Elastic" was abandoned by the defendant during the course of the trial) in its entire generic form is something con-

tained in the dictionaries as early as 1909 and its use therefore cannot be enjoined. In the main I am inclined to agree with him. On the other hand, however, where the term is used to describe a certain product for so many years as to become synonymous with the product, then under the principle enunciated by the Supreme Court of Illinois above, the appropriation of that term by a competitor may amount to misrepresentation as to the origin of the article, and if so is something that may be restrained. As the Supreme Court of Illinois says in the case just cited, the defendant: "can be restrained from doing so only in case it appears that the word has come to have a secondary or trade meaning; that is, that all notions bearing the name 'Hump' are of the appellee's manufacture. Even in such case the use of a descriptive or geographical word, in its primary sense, cannot be wholly enjoined. Whether the appellee has a trade-mark in the name or not, whether the word is capable of adoption as a trade-mark or not, if, in fact, that name means in the trade the appellee or the appellee's goods, the appellee has a right to have the appellant enjoined from using that name in selling its goods so as to mislead buyers into believing that the appellant's goods are of the appellee's manufacture. The only question of proof is the trade meaning of the name."

I accept the foregoing as the law of Illinois with reference to the use in this case of the term "Stop Nut." That is, it cannot be wholly enjoined. But since the defendant's product herein is identical in every respect with that which the plaintiff has been manufacturing for so many years and which has come to be accepted by the trade as plaintiff's product under the name "Stop Nut," I think the defendant should be enjoined from the use of that term in order to avoid deceiving the trade and confusing the goods of defendant with the goods of the plaintiff.

In the Hump Hairpin case, the court found as a matter of fact that the evidence failed to show that the word "hump" had acquired a secondary meaning in the trade indicating the appellee or the appellee's manufactures, and that the evidence did show that the appellant, in the use of a different form of wrapper in the sale of its hairpins and in the plain indication by the use of its name on the wrapper, that the hairpins were manufactured by the appellant and not by the appellee.

In the case at bar however, there is no difference in the product at all and the same name is applied thereto.

One other case cited by counsel for defendant should be distinguished. It is the opinion of Judge Evans of this Circuit in Keller, Inc., v. Chicago Pneumatic Tool Company, 298 F. 52, 57. One paragraph of that opinion not only distinguishes the facts of that case from these but also enunciates a principle which I think is applicable to the facts in this case. I quote it:

"In other words, if the article covered by a patent and manufactured by the owner of the patent is provided with a special dress or artistic adornments that are in no way involved in any of the patent claims, the competitor entering the field at the expiration of the patent may subject himself to the charge of unfair competition, if, in addition to adopting the combination covered by the patent, he adopts the dress, the artistic designs, or those individual marks with which the users have become familiar, and which they recognize as attributes of the product of the old company."

Applying that principle to the facts in this case, the defendant clearly has the right to use the teachings of plaintiff's expired patent in the manufacture of his product. Clearly he has the right to market his product but he does not have the right, as Judge Evans says in his opinion, without subjecting himself to the charge of unfair competition, to adopt the dress, artistic design and individual marks with which users have become familiar throughout the years in identifying a product as one manufactured by the plaintiff.

I find that the plaintiff has established proof of the unfair competition charged.

The use by the defendant of the term "Stop Nut," and also the term "Elastic Stop Nut," had "Elastic" not been dropped by the defendant and removed from the issue here, when used with the particular style of dress of its product that has characterized the manufacture of the plaintiff throughout these years, will be enjoined in order to avoid confusion on the part of the purchasing public and in the trade which the particular product serves.

I desire to make clear that I do not find that the plaintiff has any monopoly in the term "Stop Nut" or "Stop Nuts." I find only that when that term is used together with a nut embodying plaintiff's peculiar

style of dress, a red-colored fibre insert, and characteristic clinching at the top, such use should be enjoined in order to avoid confusion because it amounts to unfair competition.

If the defendant or anyone else desires to use the term "Stop Nut," in such a way as would not cause confusion and on a product not following the peculiar design, style of dress and red coloring which the plaintiff has used, I find no particular proprietary right in the plaintiff to this generic term which, as the defendant points out, has been in the dictionary since 1909. The plaintiff has not acquired a monopoly on the color or on the words. The plaintiff has established however its use ever since it started in business of the words "Elastic Stop Nut" and "Stop Nut," together with an identifying red circular fibre insert in its product, and this combination cannot be copied and used by anyone else putting the same product on the market without being guilty of unfair competition.

The plaintiff having established its case of unfair competition, an injunction will issue enjoining and restraining the defendant from applying the terms "Stop Nuts" or "Elastic Stop Nuts" to self-locking nuts not of plaintiff's manufacture that have the style and dress of the plaintiff's self-locking nuts.

Defendant will further be enjoined from using a red fibre insert or any colorable imitation thereof in connection with any product not the plaintiff's, except when other colors are not available by reason of the present war shortages, or such other conditions of the market as may make red, at a particular time, the only available color.

Defendant will further be restrained from publishing illustrations using a red insert to identify stop nuts of his manufacture similar to those manufactured by the plaintiff; and from representing, directly or indirectly, that the defendant is licensed by the plaintiff to manufacture lock nuts containing red colored inserts, and from doing any other act calculated to induce the public to believe that defendant's products are the plaintiff's.

■ Counsel for defendant in his argument, and I believe the exhibits bear him out, says that the defendant has stopped the use of "licensed" on his letterhead, but since there is proof that he had used it in the past, I think the injunction may contain that additional enjoining sentence.

■ As to the accounting and damages which have been prayed for by the plaintiff, I think the evidence is sufficiently clear that what the defendant has manufactured thus far has gone into use by manufacturers of equipment being made for the armed services. Therefore, although I find for the plaintiff on its complaint, and find that the plaintiff is entitled to an injunction, there will be no decree for damages, and no accounting.

There will be a judgment for costs against the defendant.

■ As to the patent set out in the defendant's counterclaim, Sande Patent No. 1,714,520, and the one claim thereof, I find the said patent invalid for lack of invention as having been fully anticipated in the prior art.

Taking the most favorable view of the Sande patent, I think it falls within the characterization of the Court of Appeals of this Circuit the case of Dixie-Vortex Company v. Paper Container Manufacturing Company, 130 F.2d 569, 572, wherein the Court said:

"We need not decide whether the patent in suit is anticipated by any one of such prior art patents. It is sufficient, we think, that the prior art disclosures are such that a person skilled in the art might readily design the improvement which Barbieri claims to have made. The improvement thus made would not, in our judgment, amount to invention, and the claims in suit are therefore invalid."

I think the same language could be properly applied to the claim of the patent of Sande in this suit. In particular, however, I find the elements of the one claim of the Sande patent fully disclosed in the following prior art patents: Feebusch and Roberts patent 1,271,559; Woods and Yost patent 892,202; and McKinnon patent 375,177. And for such lack of invention and for such anticipation in the prior art, I find the Sande patent in suit invalid.

The defendant's counterclaim will be dismissed at defendant's costs.