**Albert S. ZELLER, individually and d/b/a Avanti's Italian Restaurant, Plaintiff,**

**v.**

**Richard LaHOOD and LaGondola & Spaghetti House, Inc., Defendant.**

No. 83–1293.

United States District Court, C.D. Illinois, Peoria Division.

March 25, 1985.

David B. Daley, Peoria, Ill., Melvin F. Jager, Chicago, Ill., for plaintiff.

Richard D. McCoy, Pekin, Ill., for defendant.

## MEMORANDUM OPINION

MIHM, District Judge.

### FINDINGS OF FACT

In 1966, the Plaintiff, Albert S. Zeller, purchased a restaurant known as Lardano's located on the southwest corner of Main and University Streets in Peoria, Illinois. The purchase was of the premises, all of the assets, and the goodwill of the restaurant business. Lardano's, at that time, had been selling, for approximately two or three years, a submarine-type sandwich, made with a fresh loaf of homemade bread filled with salami, cheese, ham, and lettuce, which it called a "gondola."

Following the purchase, Zeller changed the restaurant's name to "Avanti's." He has subsequently opened a second Avanti's restaurant and also operates an open-air stand at the Peoria County Courthouse. He has continuously sold and advertised the "gondola" at all of these facilities on menus, menu boards, and signs. He has also advertised it extensively in the print and electronic media and on outdoor billboards. In addition, a third Avanti's restaurant, located on Main Street in Normal, Illinois, was given to his brother who has also continuously sold and advertised "gondolas" with Mr. Zeller's permission. Each of these restaurants uses the service mark, "home of the gondola."

There is some evidence that Defendant, Richard LaHood, sold "gondolas" for a short time in 1966. However, it was only in late 1980 or early 1981 that he began overt sporadic use of the term "gondola" to describe a sandwich which was virtually identical to that sold by Avanti's. This use took the form of a banner which appeared across the front of his "Vineyard" restaurant for two-eight weeks and a sign above "LaHood's Pizza," during which time he sold the sandwich at those facilities. Beginning in February of 1982, LaHood began opening a line of restaurants known as

"LaGondola & Spaghetti House." There are currently 14 such establishments in the Central Illinois area; the "gondola" sandwich appears on the menu and is sold in each.

Albert Zeller was aware of LaHood's use of the banner in 1980–81, the sign in 1981–82, and the opening of the "LaGondola" restaurants beginning in the spring of 1982. On February 25, 1983, after LaHood had opened five or six "LaGondola & Spaghetti Houses," Zeller, by his attorney, advised LaHood and the several other restaurant owners who were using the name "gondola" in conjunction with the type of sandwich which he sold under that name, that he had a trademark interest in the name and that they should cease use of it altogether. At that time, between 22 and 25 establishments, including those owned by both parties, were selling "gondolas." That number increased to 45–48 at the time suit was filed and stood at 51 by the time of trial. Defendant demonstrated "gondola" sales by other restaurateurs from the late 1960's into the 1980's. When LaHood continued to call his sandwich a "gondola" and failed to change the name of his restaurants, Albert Zeller instituted suit in this federal district court to protect his alleged trademark interest.

Zeller had registered the service mark "Avanti's Italian Restaurant" in 1974 but, apparently, declined the advice of his accountant to register the term "gondola" as a trademark. In December of 1983, subsequent to the filing of this suit, Zeller registered in Illinois the service mark "home of the gondola" and the trademark "gondola." Federal registration on those marks is currently pending.

Avanti's and the LaGondola & Spaghetti House restaurants all operate in central Illinois, which puts them in the same market. The sandwich at issue, as made by both, is virtually identical. There was, at trial, testimony of actual confusion as evidenced by questions of customers and presentation of LaHood's "gondola" coupons at Avanti's restaurants.

In the course of this opinion, the Court will be dealing at all times with both of the terms, "gondola" and "LaGondola." It is here noted that the use of the conjunctive "&" in the name of the restaurant makes it apparent that the term in the restaurant's name refers to the sandwich on the menu and not to the generic name for the Italian boat.

## CONCLUSIONS OF LAW

### Count I: Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Plaintiff and Defendant break out the elements required to prove a trademark interest and subsequent infringement under the Lanham Act in different ways. Plaintiff finds that there are three elements. First, the existence of a trademark, second, a protectible interest in that mark and third, an infringement of that interest resulting in a likelihood of confusion. The Defendant finds, on the other hand, that there are eight elements. Because the Court believes that the three defined by Plaintiff are comprehended in Defendant's eight, it will deal with the eight elements.

The first three elements are (1) actual, (2) prior, and (3) continuous use of the mark by the person asserting the interest. That these three elements have been met is undisputed. The fourth element, use in commerce, was the subject of an admission in the pleadings. These four need not be discussed.

The Court believes that the fifth element, affixation or use in connection with the goods, has been established clearly by the record. Mr. Zeller has used, since 1966, the term "gondola" to identify his sandwich on signs, menus, and in his advertising. Defendant contends that, in the absence of registration, the Lanham Act requires a plaintiff to prove his common law mark and that Zeller is, therefore, required to show actual physical affixation of the mark to the sandwich. The Court does not believe that this asserted requirement mandates proof of the mark by common

law standards, but rather seeks a showing of the close connection between the mark and the product envisioned by the Act itself. Certainly the case cited by Defendant, *Lindenhurst Drugs, Inc. v. Linden Plaza Drug & Variety, Inc.*, 539 F.Supp. 253 (1982) provides no support for his position. Clearly the use of the name on menus, menu boards, billboards and in advertisements has resulted in a close connection between the word "gondola" and the sandwich it was adapted to describe.

█ The intention to develop a distinctive trademark is the sixth element and one which has been the subject of considerable dispute in this case. The thrust of the argument that Mr. Zeller lacked the intent to develop a trademark rests in two facts. The first is his failure to register the term "gondola" or the phrase "Home of the Famous Gondola" and the second, his failure to act promptly at his earliest indication, in late 1980 or early 1981, that LaHood and others were using the term to describe a virtually identical sandwich. Moreover, in the face of continued use of the name by LaHood and other restaurant owners, Zeller raised no objection and took no action until 1983. The Court finds such dilatory response to be troubling, but believes that other factors outweigh his delay. The undisputed actual, prior, and continuous use, along with the fact that the "gondola" was Avanti's premier product and the subject, over 19 years, of extensive and costly advertising combined to establish Zeller's intent to develop a distinctive trademark by a preponderance of the evidence.

█ The Court finds no need to address the seventh element, attachment of secondary meaning, at any length because it finds the mark to be inherently distinctive. It would not be surprising to find the word "gondola" being used as the name of an Italian restaurant but there is nothing to connect the name inherently to the sandwich. It is a purely arbitrary term selected to denominate a particular sandwich which consists of ham, salami, cheese, lettuce, and optional tomato bedded on freshly-made sweet bread. Defendant argues that it is merely an Italian variation of other naval terms used to describe the same type of sandwich—submarine, sub, U-boat or torpedo being other variants. The observation is a valid one but does not prove that "gondola" in this context is not arbitrary. It does suggest that this Court, in the same factual circumstances, would have found those terms, also, to have been arbitrary and inherently distinctive. There is merit in Defendant's assertion that extensive use by others can weaken this distinctiveness. The Court has considered carefully the possibility that this has occurred here and has concluded that, although it is a close question, the term has not yet become generic in nature.

█ The eighth element, likelihood of confusion, has, in the Court's opinion, been established by a preponderance of the evidence. The focus of concern has been at what point that potential for perplexing customers should be tested. It appears to the Court that the time the Plaintiff filed his demand on Defendant to cease and desist is the appropriate time to test whether there was then a likelihood of confusion as to the source of the sandwich. To evaluate it later would have the effect of punishing Plaintiff for any delay occurring between his filing of the demand and the date of trial, and to test earlier is to allow Plaintiff to escape the ramifications of his delinquency in acting to stop use of the term by other restaurateurs.

█ The name "gondola" was used by both parties to describe, within the same market, an identical sandwich made from identical ingredients. This, in itself, creates a probability of confusion. In addition, there is proof in the record of actual confusion of the public at that time. It is unfortunate that no survey has been proffered to the Court by either side. In the absence of such proof, the Court finds that the record as it exists includes definitive evidence of actual confusion which, taken in conjunction with the other evidence in the case, establishes confusion.

Because the Court has concluded that the time for testing the likelihood of confusion is when the Plaintiff filed his cease and desist demand on Defendant, it necessarily follows that Defendant's evidence of fairly extensive use of the name "gondola" by other restaurateurs *subsequent to that time* is not controlling on the question of whether it has become generic.

Defendant has argued the existence and applicability of several defenses under the Lanham Act. The first, failure to attain a secondary meaning, was addressed previously when the Court indicated that, because the term as used was inherently distinctive, there was no need to attain secondary meaning. The second defense, lack of confusion, has also already been addressed. Furthermore, there is no evidence of abandonment of the trademark by Albert Zeller, which disposes of the third defense.

■ The defenses of laches and acquiescence have been asserted because of Albert Zeller's silence in the face of the early uses of the term "gondola" to describe the sandwich. The relevant precedents indicate that the two defenses, in a situation such as this one, should be treated the same.

Clearly, some laches does exist. The issue is whether it is sufficient to constitute a total bar. The Court believes that it is not. Although there was earlier sporadic use, significant employment of the name by others began with the inception of the chain of LaGondola restaurants about February of 1982. Although letters of complaint were not sent out until January and February of 1983, there are no precedents which suggest that that period of time is enough to erect a total bar against available remedies for the Plaintiff. The Court notes that this is a bifurcated trial and that, while these defenses bear significantly on the damage issues, they are not decisive on the question of liability. The delay was not such that by February of 1983 a compelling claim could be made that the term had become generic.

The final two defenses claimed by the Defendant, lack of intent to develop and lack of affixation, have been rebutted by the Court's earlier findings that there was an intent on the part of Albert Zeller to develop a distinctive mark and that there has been sufficient identification because of the close and continuous use of the name in connection with the product.

■ The Lanham Act itself prohibits any person from affixing, applying, annexing, or using words or other symbols which tend falsely to describe or represent a false designation or origin. It is, thus, apparent that intent to infringe is not a necessary element to establish violation of the Act and the Court does not here find that Richard LaHood possessed such intent. The record indicates that the Defendant was familiar with the term "gondola" and its meaning. He knew that it was a popular product sold by Avanti's and that it was well known in the relevant market area. He apparently recognized it as a clever name for a sandwich in an Italian restaurant, especially when he patronized a restaurant named "LaGondola" in Mexico City, and determined to use that name for his chain of restaurants. The Court, therefore, finds that although he was aware of Avanti's continuous use, his mental state falls short of specific intent to infringe.

For all of the foregoing reasons, the Court here finds that the Plaintiff has established liability for violation of § 43(a) of the Lanham Act.

### Count II: Violation of Common Law Trademark Rights

■ The elements and defenses under this count are virtually identical to those set out in count I. The Defendant has argued, however, that the absence of actual affixation is fatal to the common law complaint. In addressing this question, in response to Defendant's motion for a directed verdict during the trial, the Court held that actual affixation was not necessary. On further reflection, that decision is reversed. Although it is clear that the requirement of affixation has changed as a

result of legislative enactments, the Illinois case of *DeLong Hook & Eye Co. v. Hump Hairpin Mfg. Co.*, 297 Ill. 359, 130 N.E. 765 (1921) which sets out the common law requirement of actual affixation has never been overruled. It is still a correct statement of the common law of Illinois and controls in the absence of specific statutory authority to the contrary. The Court, therefore, holds that Plaintiff has failed to prove violation of his common law trademark rights.

*Count III: Illinois Uniform Deceptive Trade Practices Act, Illinois Revised Statutes, Ch. 121½, § 311 et seq.*

■ Although there are 12 activities, 11 specific and one catch-all, which can constitute deceptive trade practices, the Act effectively delineates two prohibited forms of action. The first is "passing off" the goods or services of another and the second is causing a likelihood of confusion by some pattern of designation or representation in conjunction with goods or services. The Court here holds that the Plaintiff has met his burden, establishing liability of the Defendant under this Act. Likelihood of confusion has been discussed earlier. On the issue of "passing off goods and services of another," the critical question for the Court is whether intent to deceive is a necessary element. To find an answer, it is necessary to make reference to the Prefatory Illinois Notes set out at the beginning of the Illinois Uniform Deceptive Trade Practices Act (Ch. 121½, § 311 et seq.) in Smith Hurd. There the commentators stated that:

"Thus, the Act makes clear that to obtain an injunction against an act known as unfair competition, the plaintiff: ...

(4) Need not prove that the defendant acted with intent to deceive, but need only show that defendant has engaged in conduct likely to cause confusion."

Smith Hurd, Illinois Annotated Statutes, ch. 121½, cumulative annual pocket part for use in 1984–85, p. 165.

Therefore, even though the Court has found that LaHood lacked specific intent to deceive, Plaintiff has established liability under the Illinois Uniform Deceptive Trade Practices Act by a preponderance of the evidence.

*Count IV: Violation of the Illinois Anti-dilution Act, Illinois Revised Statutes, Ch. 140, § 22.*

■ This statute permits the issuance of an injunction to prohibit subsequent use of the same or similar mark by a second-comer if there exists a likelihood of injury to the business reputation or of dilution of the distinctive quality of the mark. The evidence which has been presented with respect to likelihood of injury to business reputation revolved around an incident of alleged food poisoning which occurred at LaHood's restaurant. One of Avanti's employees testified to conversations she had on a second job with a maintenance man and several practical nurses about the connection between Avanti's and the food poisoning incident. The Court finds that this is insufficient to establish likelihood of injury to business reputation. Actual dilution, on the other hand, clearly exists. In fact, this case provides a classic example of dilution because the testimony and other evidence presented at trial amply demonstrate that the term "gondola" as applied to a sandwich was beginning to acquire generic overtones.

After studying the language of the statute itself, it appears that the Plaintiff need only establish one or the other likelihood, not both, to meet his burden. Section 22 provides that:

"... all courts having jurisdiction thereof shall grant injunctions ... if there exists a likelihood of injury to business reputation *or* of dilution of the distinctive quality of the mark...."

It would, therefore, appear that Plaintiff, having proven likelihood of dilution, has sustained his burden, and has established liability under the Illinois Anti-Dilution Act.

*Count V: Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois Revised Statutes, Ch. 121½, § 261 et seq.*

■ The Court is constrained to find that Plaintiff has prevailed on this count by virtue of the Court's finding of a violation under count III. Referring to § 262 of Ch. 121½, the first half of the paragraph appears to require a specific intent to deceive:

> "§ 2. Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with the intent that others rely upon the concealment, suppression or omission of such material fact, ..."

However, the paragraph continues:

> "... or the use or employment of any practice described in section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

It appears clear from the statutory language that liability under this statute requires neither a specific intent to deceive nor actual deception or damage as a trigger. Therefore, Plaintiff has again sustained his burden and the Court finds the Defendant liable for violation of the Consumer Fraud and Deceptive Business Practices Act.

*Count VI: Unfair Competition under § 43 of the Lanham Act, 15 U.S.C. § 1125(a)*

■ The theory put forth by Plaintiff is that, even if there is shown no protectible trademark as such, federal common law developed in conjunction with § 43(a) still imposes liability if the actions undertaken by the Defendant constitute unfair competition. Although LaHood plainly intended to adopt a well-known, identifiable name to use for his sandwich, the Court has earlier

found no intent to deceive nor specific intent to infringe. Although such intent was not necessary to prove the *statutory* claim, the Court is of the opinion that the tenor of the Seventh Circuit's comments defining the common law action of unfair competition suggests that it should require predatory or rapacious purpose. *Technical Publishing Co. v. Lebhar-Friedman, Inc.*, 729 F.2d 1136 (7th Cir.1984). Zeller's failure to take steps to protect any interest which he had in the name "gondola" constituted a partial laches which arguably misled LaHood and necessarily impacts on the Court's determination of Defendant's intent at that time. In addition, the background of the large banner which hung for 2–8 weeks, without objection from Zeller, over the Vineyard restaurant and the unchallenged use of the name "gondola" by LaHood and others prior to the establishment of the LaGondola restaurants undermined the persuasiveness of Plaintiff's argument under this count. In light of its supposition and of the foregoing circumstances, the Court declines to find the existence of non-statutory unfair competition or to impose liability on the Defendant under this count.

This Memorandum Opinion sets out only the Court's findings with respect to liability and imposes liability on the Defendant under Counts I, III, IV, and V of the six-count complaint. As was indicated earlier, this action was bifurcated and the decision on damages and appropriate relief will be rendered following that portion of the trial which deals with those issues.