**INDEPENDENT NAIL & PACKING CO., Inc. v. STRONGHOLD SCREW PRODUCTS, Inc.**

No. 48 C 565.

United States District Court
N. D. Illinois, E. D.

Oct. 1, 1952.

Thomas F. McWilliams, Chicago, Ill., Herbert A. Baker, Boston, Mass., for plaintiff.

Casper W. Ooms, Robert C. Williams, Chicago, Ill., for defendant.

PERRY, District Judge.

This action was filed on April 26, 1948, by the Independent Nail and Packing Company, Inc., a Massachusetts corporation, which has its principal place of business in Bridgewater, Massachusetts. It is engaged in the manufacture and production of nails. The defendant, Stronghold Screw Products, Inc., is an Illinois corporation, with its principal place of business at Chicago, Illinois, which manufactures and merchandises screws, bolts, washers, eyelets, rivets, etc. It is a successor in business to a partnership known early as Manufacturers' Screw and Supply House and later as Manufacturers' Screw Products.

The complaint charges infringement by defendant of plaintiff's registered Trade-Mark No. 367,448, infringement by the defendant of plaintiff's alleged common law Trade-Mark in the use of the word Stronghold, and unfair competition on the part of the defendant.

In 1934, the plaintiff began to manufacture a new nail with an annular thread, which was later disclosed and claimed in Stone Patents Nos. 2,025,961 and 2,126,585. At that time, the word Stronghold alone was used to identify the contents of those shipping cartons, which contained this particular nail.

The plaintiff is the owner of Registered Trade-Mark No. 367,448, which was registered in the United States Patent Office on May 16, 1939. There is evidence that plaintiff began to use the design of its registered trade-mark as early as July 1, 1936. This registered trade-mark comprises a representation of a castle or stronghold, enclosed in a triangular frame, two sides of which are formed by representations of the annularly threaded Stronghold nail. The bottom of the triangle bears the word Stronghold above the word "Nails", while a decorative ribbon extends from the sides of the triangle, and the words "They hold forever" appear on the ribbon. The plaintiff has disclaimed the words "They hold forever", "Nails" and the representation of the annularly ribbed nails themselves.

The evidence tends to show that the defendant's predecessor began to use the word Stronghold in its business as early as October, 1938, when it purchased 5,000 copies of a catalogue, bearing the word Stronghold and distributed them throughout the country. It began to use its Stronghold logotype as a technical trade-mark in 1940. In this logotype, the letters of the word Stronghold appears to be threaded on a bolt, while the words "Screw Products" are printed on a washer into which the bolt appears to be inserted. Since that time, the defendant's business forms, including packing boxes, sample envelopes, labels, stationery, catalogues, purchase orders, and requests for quotations have continuously employed the logotype. The word Strong-

hold did not appear in the defendant's corporate name until the summer of 1946.

Both the plaintiff and the defendant normally sell their goods in large quantities, the goods being ordered from the parties by trained industrial purchasing agents who are discriminating buyers. Neither party packages its goods for the shelf hardware trade, and neither party sells goods in the impulse buying market.

Section 32(1) of the Trade-Mark Act of 1946, 15 U.S.C.A. § 1114(1), provides in part: "Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark * * * which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * *. shall be liable to a civil action * * *."

It is the view of this Court that the evidence fails to sustain the allegation of infringement by the defendant of the plaintiff's registered trade-mark. The logotypes, in their respective combinations, bear no resemblance to each other. As the Court examines them, it fails to find any such similarity or colorable imitation as would likely cause confusion or mistake as to the source of the goods.

The Court finds a similarity in each logotype only after it separates the combinations into their individual features. That similarity is the use of the word Stronghold in both emblems which is the only similarity apparent. This fact however does not aid the plaintiff's position. The plaintiff, in effect, is attempting to monopolize an individual feature of the combination, upon which it obtained a federal registration. The Court, through the exercise of its injunctive powers, will not aid such an attempt when, as in the case before the bar, another does not use the individual feature in combination with a colorable imitation of the complete trademark. A mark must be considered in its entirety and not be dissected into its respective elements. Beckwith's Estate, Inc. v. Commissioner of Patents, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705. Life Savers

972

Corp. v. Curtiss Candy Co., 7 Cir., 182 F. 2d 4.

 If the plaintiff is to prevail in this action, it must do so on the basis of a common law trade-mark in the use of the word Stronghold. "The general proposition is well established that words which are merely descriptive of the character, qualities, or composition of an article, or of the place where it is manufactured or produced, cannot be monopolized as a trade-mark".

Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 626, 35 L.Ed. 247. See also: Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; Life Savers Corp. v. Curtiss Candy Co. supra. In the case of Rosenberg v. Shakeproof Lock Washer Co., 20 F.Supp. 959; affirmed 3 Cir., 100 F.2d 811, the expression "Self-Tapping" used in connection with the sale of a particular type of sheet metal screws and incorporated, as in the

PLAINTIFF'S MARK

DEFENDANT'S MARK

case before the bar, in combination with a number of other features in an emblem, was denied the protection of the court against its use by another in the sale of the identical article. When a party seeks protection of a descriptive term as a trademark, it must prove a secondary meaning of the descriptive term in the term in the trade in which it is sought to be enforced. "The plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer." Kellogg Co. v. National Biscuit Co., 305 U. S. 111, 113, 59 S.Ct. 109, 113, 83 L.Ed. 73. If the plaintiff fails to make such showing, it is not entitled to the exclusive use of the term in question; but it can merely "require that the defendant use reasonable care to inform the public of the source of its product." Kellogg Co. v. National Biscuit Co., supra.

■ It is the view of this Court that the word Stronghold, as used by the plaintiff, is solely a descriptive classification of one of several nail products, which are manufactured by the plaintiff corporation. The evidence does not warrant the inference that the term Stronghold, as it was used by the plaintiff in the trade, acquired any secondary meaning so that it might be accorded the dignity of trade-mark status and be granted legal protection by the courts.

In 1934, the Ruberoid Company required a nail with increased holding power to be used in the application of a new asbestos siding. The plaintiff developed the specific forms of annularly threaded nails which are the subject of Patent No. 2,025,-961, granted December 31, 1935, and Patent No. 2,126,585, granted August 9, 1938. The "holding power" of the nails is emphasized in the claims of both patents. Plaintiff designated this nail as the "Stronghold Nail". That the plaintiff sought to emphasize the increased "holding power", the security of the nail, produced by the annular thread, in the selection of this term, is evidenced by H. J. Stone, an officer of the plaintiff corporation, when he testified as to the choice of the word: "Well, it seemed to me to be the sort of name that was easy to remember, and *that was symbolic of the properties that were in this nail and drive screw.*" It is interesting to note that the selection of this particular term by the plaintiff was suggested by the fact that a certain Massachusetts firm was using the term "Stronghold" in connection with their product, paper labels. The evidence reflects that, in its shipping and advertising practices, the plaintiff used the term Stronghold to describe one of its nails—the nail with the annular thread. According to established regulations, plaintiff's employees placed the word Stronghold on cartons, which contained the annularly threaded nail. Later the term was replaced by plaintiff's logotype as a means of identification. Throughout the years, it employed the Stronghold designation only for the nail with the annular thread. It was not until after this suit was filed that the plaintiff began to use the word Stronghold in connection with the sale of products other than the annularly threaded nail. Plaintiff's evidence indicates that the earliest date of such modified use was October 27, 1949.

The evidence also clearly shows that the plaintiff, in its rather extensive advertising, used the term Stronghold to describe its nail with the annular thread, and, thereby, to distinguish this nail from other nails, possessing different threads, such as the "Screw-Tite" and the "Regular." This advertising sets out descriptive uses of the word Stronghold and focuses the reader's attention upon the primary quality and advantage of the nail with the annular thread, namely, its superior holding power. There is evidence to show that the plaintiff persisted in this advertising practice even beyond the date of filing of this suit, April 26, 1948.

As the Court views the evidence, it concludes that the plaintiff has failed to establish that the term Stronghold, as it was used by the plaintiff, had acquired a secondary meaning, that it related to the producer rather than the product. The existence of such secondary meaning must be shown before the plaintiff can establish its right to the exclusive use of the term Stronghold. Purchasers, who testified for

the plaintiff, stated that the primary significance of the term Stronghold was not the producer, but rather the product, the nail with the annular thread, the nail with the superior holding power.

Consideration must now be given to the plaintiff's final charge, namely, unfair competition. A case, brought on the theory of unfair competition, will be determined by local law. Time, Inc. v. Viobin Corporation, 7 Cir., 128 F.2d 860. The law of Illinois on this point is clearly set out in the case of Stevens-Davis Co. v. Mather & Co., 230 Ill.App. 45; "The courts in this state do not treat the 'palming off' doctrine as merely the designation of a typical class of cases of unfair competition, but they announce it as the rule of law itself—the test by which it is determined whether a given state of facts constitutes unfair competition as a matter of law." The evidence in the case before the bar does not show that the defendant is "palming off" its goods as those of the plaintiff. On the contrary, the Court finds that the defendant is exercising reasonable precaution to avoid any mistake between its product and that of the plaintiff. For a number of years, it has employed a distinctive logotype, which refers solely to screw products. The plaintiff has used its logotype and the term Stronghold only with reference to a particular nail. This consideration is vital when one remembers that the parties do not manufacture similar products and that the merchandise is sold to trained industrial purchasing agents who are discriminating buyers. It is significant that officers of the plaintiff corporation, during the course of their testimony, admitted that they did not know of a single instance wherein a customer mistakenly purchased products from the Stronghold Screw Products, Inc. instead of The Independent Nail and Packing Company. There is testimony to the same effect, given by certain purchasers of the plaintiff corporation. There is further testimony that there is no likelihood of confusion in the trade. The purchasers are aware of the fact that nails are manufactured by the plaintiff and screw products by the defendant. There has never been any confusion in their minds between these two companies and their products. It is true that the plaintiff has introduced a few letters of inquiry regarding the "Stronghold Nail", addressed to the defendant rather than the plaintiff. It is also true that these inquiries were referred to the plaintiff. In this respect, also, it should be remembered that each party is doing a large volume of business annually. These few letters in a large business do not show a likelihood of confusion.

While the aforegoing is determinative of the issues in this cause, the Court chooses to render a short comment on the defense of laches. One who unreasonably delays his attempt to enforce his rights in an alleged trade-mark will not be accorded the protection of the court. French Republic v. Saratoga Vichy Spring Co., 191 U.S. 427, 24 S.Ct. 145, 48 L.Ed. 247. The evidence in this case clearly shows that the defendant began to use the term Stronghold in connection with its screw products as early as 1939. It advertised its products under this name in the Thomas Register in December 1938 and December 1940. The plaintiff advertised in the same issues and, due to the important usage of the Thomas Register in the trade, it is fair to assume that the plaintiff probably had actual notice of the defendant's use of the term Stronghold. The evidence reflects that, as early as 1940, the defendant's predecessor addressed letters to the plaintiff, whose letter heads bore the legend "Stronghold Products". After the defendant adopted its logotype in 1940, it directed purchase orders to the plaintiff, which bore this logotype. This occurred as early as January 18, 1941. There is in evidence a number of cancelled checks which represent payments by the defendant to the plaintiff. Each check bears the defendant's Stronghold logotype in a large bold design. Between January 2, 1942 and December 7, 1945, twenty-six such payments were made; between 1January 25, 1946 and December 29, 1947, four months before the filing of this suit, four such payments were made. This certainly constitutes actual notice to the plaintiff.

Between 1940 and 1946, the defendant has spent over $100,000 in advertising the

logotype of the word Stronghold in connection with its screw products. It has been spending at least $10,000 per year since that time. During these years, the advertising in the trade has been extensive.

It is the view of this court that the plaintiff's failure to bring suit before April, 1948, when it had actual notice at least as early as July, 1940, during which time the defendant had expended large sums of money, is an acquiescence to the detriment of the defendant, sufficient to support the defense of laches. Even if this Court would have found that the plaintiff had enforceable trade-mark rights, it would deny relief and uphold the defense of laches and find that the plaintiff was on the date of the filing of this complaint and still is estopped from recovering on such an action.

Accordingly, the complaint will be dismissed.