## INDEPENDENT NAIL & PACKING CO., Inc. v. STRONGHOLD SCREW PRODUCTS, Inc.

### No. 10808.

United States Court of Appeals
Seventh Circuit.

July 9, 1953.

---

Thomas F. McWilliams, Chicago, Ill. and Herbert A. Baker, Boston, Mass., for appellant.

Casper William Ooms and Robert C. Williams, Chicago, Ill., for appellee.

Before DUFFY and LINDLEY, Circuit Judges, and BRIGGLE, District Judge.

DUFFY, Circuit Judge.

In this action plaintiff charges the defendant with appropriating plaintiff's trademark "Stronghold" by including "Stronghold" in its corporate name and applying "Stronghold" to a line of goods, which plaintiff claims is similar to that made and sold by it. The complaint also charges defendant with unfair competition.

After a trial the district court dismissed the complaint on the ground that plaintiff's registered trade-mark "Stronghold" was not infringed; that the trade-mark "Stronghold" is descriptive, and that plaintiff did not establish a secondary meaning for it; that Illinois law on unfair competition requires proof of palming off of its goods by the defendant, and that such proof was not made; and finally that plaintiff was not entitled to relief because of laches in filing this suit. 107 F.Supp. 969.

For many years plaintiff has been engaged in the manufacture and sale of a wide line of fastener products, such as nails of various types, screws, escutcheon pins and the like. Prior to 1934 the composition shingle industry was having difficulty in finding suitable fasteners to hold new shingle coverings in place on old walls. The conventional smooth shank nails were then in use and the contraction and expansion of shingles on a wall often caused such nails to loosen and pop out.

In 1934 plaintiff designed and produced a nail with a series of annular ribs about the shank, which it designated as its Stronghold nail, and which did not become loosened by the expansion and contraction of the material into which it had been driven. It could be readily driven with a hammer, and was described by plaintiff as "The One-Way Nail." Plaintiff began an advertising campaign in 1934 to popularize its new product. In 1935 plaintiff mailed about 130,000 pieces of direct-to-customer advertising. In 1936 this number was doubled, and in 1937 and 1938 the direct mail advertising was further intensified.

At first plaintiff sold its Stronghold nail primarily to the roofing and building industry, but later it came to be used by many industries. For instance, as early as 1942 it was widely distributed in the shoe industry by the United Shoe Machinery Co. At the date of the trial plaintiff's products encompassed almost the entire field of metallic fasteners. In 1951 plaintiff's total volume of business was $4,834,000. In that year the sale of its products in the Stronghold brand amounted to $2,275,000.

From the date when the word "Stronghold" was first adopted by plaintiff and ever since, all containers enclosing the annularly threaded nails have been marked at its factory with the name "Stronghold." Likewise invoices and letterheads have included the word "Stronghold." Since 1942, when plaintiff acquired a postage meter stamp, in connection with which a slogan plate on which the words, "Stronghold Nails Hold Forever," was used, most envelopes emanating from plaintiff's plant have borne that slogan.

As early as July 1, 1936, plaintiff began the use of a design comprising a representation of a castle or stronghold, enclosed in a triangular frame, two sides of which are formed by representations of its annularly threaded Stronghold nail. A decorative ribbon extends from either side of the triangle and bears the words, "They Hold Forever." The bottom side of the triangle bears the word "Stronghold" above the word "Nails."

In 1938 plaintiff applied for registration of this design as its trade-mark. During the prosecution of the application for registration, the Patent Office required plaintiff to disclaim certain descriptive material, such as the representation of a nail, the word "Nails," and the phrase, "They Hold Forever." No disclaimer was required as to the word "Stronghold," and on May 16, 1939, trade-mark registration No. 367,448 was granted to plaintiff. After the grant of the trade-mark registration plaintiff customarily used the trade-mark in the form shown in the registration, but to some extent it also used the word "Stronghold" alone.

In the early 1930's defendant's predecessor operated under the name of Sackheim Brothers Corporation. In 1936 its name was changed to Manufacturers Screw and Supply House, and in 1940 to Manufactur-

ers Screw Products. Defendant's first use of the word "Stronghold" as applied to its products was in October, 1938. Defendant concedes that as early as January 9, 1940, it was aware of plaintiff's "Stronghold" trade-mark and its registration. In 1940 defendant began the use of the name "Stronghold" in a design in which the word "Stronghold" appears to be threaded on a bolt and the words "Screw Products" are printed on a washer into which the bolt appears to be threaded. This use, referred to in the testimony as logotype, appeared on defendant's letterheads, business forms and catalogues, but the company's name, Manufacturers Screw Products, also appeared prominently.

In the summer of 1946 Manufacturers Screw Products changed its name to Stronghold Screw Products, Inc. Letterheads and other business forms were changed to show the new corporate name in bold type. Plaintiff notified defendant on November 27, 1946, that the use of the word "Stronghold" by the defendant was causing confusion in the trade and damage to the plaintiff. Defendant did not desist, and this action was commenced on April 26, 1948.

Defendant denies that it manufactures nails and refers to itself as a "screw, nut and bolt manufacturer." However, both plaintiff and defendant contact the same prospective customers through direct mail advertising, listing in trade magazines, and in directories customarily used by purchasing agents. Defendant circulates its catalogue to plaintiff's customers. Plaintiff's products are used for many of the same purposes for which defendant sells its products.

In ascertaining whether "principles of old-fashioned honesty" were followed, See: Jewel Tea Co., Inc. v. Kraus, 7 Cir., 187 F.2d 278, 282; Radio Shack Corp. v. Radio Shack, Inc., 7 Cir., 180 F.2d 200, 206, it is significant that in 1947 or 1948 defendant listed itself as a nail manufacturer in the Thomas Register, which publication was described as the "purchasing agents' Bible." Mr. Sackheim conceded on the trial that defendant does not manufacture nails, and that to so describe defendant in the Thomas Register was a misrepresentation.

The district court held there was no infringement of plaintiff's registered trademark, stating that plaintiff's and defendant's logotypes in their respective combinations have no resemblance to each other and that the only similarity between them that he could find was the use of the word "Stronghold." The court apparently gave no weight to the fact that "Stronghold" is the most prominent word in defendant's mark while "Stronghold Nails" are the most prominent words appearing in plaintiff's mark.

█ It is well established that in order to constitute infringement it is not necessary to copy an entire trade-mark. Nims on Unfair Competition and Trade-Marks, 4th Ed., Vol. I, page 678, states: "A corollary to the doctrine that there may be an infringement though only a part of the trade-mark has been appropriated is the rule that '* * * the imitation need only be slight if it attaches to what is salient, * * *.' * * * An unfair competitor need not copy the entire mark to accomplish his fraudulent purpose. It is enough if he takes the one feature which the average buyer is likely to remember." This court stated the test as follows: "Whether there is an infringement of a trade-mark does not depend upon the use of identical words, nor on the question as to whether they are so similar that a person looking at one would be deceived into the belief that it was the other; but it is sufficient if one adopts a trade-name or a trade-mark so like another in form, spelling, or sound that one, with a not very definite or clear recollection as to the real trade-mark, is likely to become confused or misled." Northam-Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774, 775.[1] A side by side comparison is not the test for determining confusing similarity of trade-marks. Albert Dickinson Co. v. Mellos Peanut Co. of Illinois, 7 Cir., 179 F.2d 265, 269.

█ Defendant was the late comer in the adoption of the word "Stronghold."

---

[1] Cited with approval in Queen Mfg. Co. v. Isaac Ginsberg and Bros., Inc., 8 Cir., 25 F.2d 284, 287.

Defendant's first use of it was four years after plaintiff had applied it to its new type nail and began its aggressive advertising campaign featuring the word "Stronghold." Defendant adopted its logotype emphasizing the word "Stronghold" with full knowledge of plaintiff's registered trade-mark which featured the same word. It did so at its peril.

█ Defendant asserts and the district court found that the word "Stronghold" was descriptive, and referred to the superior holding power of plaintiff's nail with the annular thread. The court also found that throughout the years plaintiff used the "Stronghold" designation in connection with only one of its products, to wit, the nail with the annular thread. We think these findings are clearly erroneous.

Although the word "Stronghold" is suggestive of one of the attributes of plaintiff's nail with the annular thread, it is not descriptive of a nail, let alone that type of nail. A person unaware of the particular product or the manufacturer, upon seeing or hearing the name "Stronghold," would find it virtually impossible to identify the product to which it might have been applied. The label "Stronghold" on a carton, with no other words to designate the contents, would never reveal that such contents were nails of a particular type.

It is true that the plaintiff first used the term in connection with its new nail which solved a serious problem in the composition shingle industry. It is also true that this nail was usually featured in plaintiff's advertising but the name "Stronghold" often appeared in such advertising in letters several times larger than used in any other words in the advertisement. In its advertising the word "Stronghold" was always given great prominence. Furthermore, on labels such as plaintiff's Exhibit 105, the word "Stronghold" was used in connection with "Wood Heel Nail," and in plaintiff's Exhibit 140 in connection with the words "Drive Screws." [2]

Of course no one has a right to preempt a word which has been commonly used to designate and identify the product to which it is applied. However, a trademark may consist of a word or words suggestive of the character of the goods or the properties which the owner of the mark wishes the public to attribute to them, such as "Holeproof", Holeproof Hosiery Co. v. Wallach Bros., C.C., 172 F. 859, and be valid. In fact defendant is in a weak position to assert that "Stronghold" is a descriptive word invalidating plaintiff's trade-mark for, when this litigation threatened, defendant in 1947 registered its logotype featuring "Stronghold" in 46 States of this country. We hold plaintiff's trade-mark is not invalid because of being descriptive.

The district court found there was no confusion in the trade because of defendant's use of the "Stronghold" logotype. The Court did not make a finding as to the effect of defendant's use of the name "Stronghold" as a part of its corporate name, except as might be implied from the finding that there was no confusion in the minds of purchasers of plaintiff's and defendant's products.

██ It is not necessary to show actual cases of confusion since the test under the statute, 15 U.S.C.A. § 1114(1), is likelihood of such confusion. Admiral Corp. v. Penco, Inc., 2 Cir., 203 F.2d 517, 520. However, the testimony in the case at bar abundantly proved that actual confusion existed. Witness after witness, such as the purchasing agent of Rubberoid Company and a Screw Machine Products salesman and others, as well as correspondence that was misdirected, demonstrated confusion did exist. Furthermore, a number of witnesses testified that in the fastener trade the name "Stronghold" identified the plaintiff as the producer of the Stronghold nail. Plaintiff received letters addressed to Stronghold Nail Co., Stronghold Nail and Packing Co., and Stronghold Upholstery Nails, Independent Nail and Packing Co. A purchase order from International Harvester Co. was ad-

---

2. These are a type of threaded nail which are hammered into place, rather than screwed into wood as screws are, and they can be withdrawn with an ordinary screw driver.

dressed to Stronghold Independent Nail and Packing Co. It seems self-evident that a purchaser who knew the merits of the Stronghold nail, but could not recall the corporate name of the plaintiff, could easily become confused if he examined the Thomas Register and found the Stronghold Screw Products Company listed as a manufacturer of nails. We conclude that the court's finding that there was no confusion in the trade was clearly erroneous.

Plaintiff and defendant were and are in competition with each other. Both sell throughout the United States. Both contact the same prospective customers through direct mail advertising and through listings in trade publications and directories usually used by purchasing agents. They sell products which are interchangeable in use. Defendant circularizes its catalogue to plaintiff's customers. Although a large percentage of plaintiff's output is in the field of nails, it also manufactures and sells wood screws, sheet metal screws, and fasteners having helical threads on a shank and with a slotted head. The products of both plaintiff and defendant appeal to users of fasteners in many industries. Since 1946 when defendant first used "Stronghold" in its corporate name, both plaintiff and defendant approached prospective purchasers using the name "Stronghold."

■ Upon the issue of unfair competition the trial court correctly stated that the law of Illinois is applicable. Relying on Stevens-Davis Co. v. Mather and Co., 230 Ill.App. 45, the court held that as there was no evidence of palming off of its products, defendant was not guilty of unfair competition.

Four earlier Illinois cases did establish the requirement of palming off in unfair competition cases. They are Stevens-Davis Co. v. Mather and Co., supra; DeLong Hook and Eye Co. v. Hump Hairpin Mfg. Co., 297 Ill. 359, 130 N.E. 765; Nestor Johnson Mfg. Co. v. Alfred Johnson Skate Co., 313 Ill. 106, 144 N.E. 787; and Ambassador Hotel Corp. v. Hotel Sherman Co., 226 Ill.App. 247. However, we think the rule announced in these cases is no longer the law of Illinois.

In 1942 the Supreme Court of Illinois in Investors Syndicate of America, Inc. v. Edward J. Hughes, Secretary of State, 378 Ill. 413, at page 422, 38 N.E.2d 754, at page 759, stated, "Even in injunction cases between competing corporations the trend of decision is to place less emphasis on competition and more on confusion, as is evidenced by the following cases: (citing) 'The test should be whether the public is likely to be deceived.'" In 1943 the Illinois Appellate Court, in Lady Esther, Ltd. v. Lady Esther Corset Shoppe, 317 Ill.App. 451, 46 N.E.2d 165, 148 A.L.R. 6, restrained defendant from conducting a corset business under the name "Lady Esther Corset Shoppe" on the ground that the defendant was competing unfairly with plaintiff which had been engaged in the cosmetic business for years under the name "Lady Esther." It is obvious there could be no palming off. Of course the Lady Esther case did not turn upon the use of similar names alone; it was a case of similar names plus a secondary meaning attached to one of them.

We think that the test under the Illinois law is whether the adoption and use of a name by defendant is likely to cause confusion in the trade as to the source of products, or is likely to lead the public to believe that the defendant is in some way connected with the plaintiff. Judge Campbell, in Elastic Stop Nut Corp. v. Greer, 62 F.Supp. 363, decided in 1945, and Judge Holly in Metropolitan Opera Ass'n, Inc. v. Metropolitan Opera Ass'n of Chicago, Inc., 81 F.Supp. 127, decided in 1948, agreed that in Illinois palming off is no longer necessary to sustain a cause of action for unfair competition.

■ Defendant insists that plaintiff has used the word "Stronghold" only to identify a particular thread on a particular nail. However, there is abundant evidence in the record which clearly establishes the use of the word "Stronghold" by plaintiff as a trade-mark. Defendant, with full knowledge of plaintiff's use of the word in its business, appropriated plaintiff's common law trade-mark, as well as the predominant feature of plaintiff's registered trade-mark. Also, defendant's conduct constituted unfair competition. Plaintiff is entitled to re-

lief unless it is barred by laches. The trial court was of the view that plaintiff's failure to bring suit before April, 1948, when it had notice of defendant's use of the word "Stronghold" as early as 1940 or 1941, was sufficient to support the defense of laches.

 Although defendant's first use of the word "Stronghold" was in the fall of 1938, plaintiff did not become aware of such use until 1941. From time to time defendant gave plaintiff orders for merchandise involving comparatively small amounts, and defendant's purchase orders and letterheads after 1940 disclosed its logotype featuring the word "Stronghold." However, prior to the summer of 1946 defendant was conducting its business under the corporate name of Manufacturers Screw and Supply House or Manufacturers Screw Products, Inc. The general manager of plaintiff testified that while he noticed defendant's use of the word "Stronghold" prior to 1946, he did not think there was anything alarming about the situation. Defendant customarily prominently displayed its corporate name in connection with the use of its logotype. Prior to 1946 there was no confusion among prospective customers that had come to the attention of plaintiff's officers. It was defendant's incorporation of the word "Stronghold" into its business name that caused most of the confusion. Defendant's course was "progressive * * * encroachment" and "such a course does not tend to arouse hostile action until it is fully developed". O. & W. Thum Co. v. Dickinson, 6 Cir., 245 F. 609, 623.

Defendant was notified by plaintiff of alleged infringement shortly after defendant changed its corporate name to Stronghold Screw Products, Inc., and shortly after defendant was listed in various trade publications and directories under that name. From October, 1946, when defendant was notified of the infringement, to the filing of this suit on April 26, 1948, there was considerable correspondence back and forth between plaintiff and defendant seeking an amicable solution of the controversy.

Mere delay in bringing suit ordinarily does not affect the right to an injunction against further use of an infringing trade-mark. Mantle Lamp Co. of America v. Aladdin Mfg. Co., 7 Cir., 78 F.2d 426. In that case we said, 78 F.2d at page 429: "The most that can be claimed by appellee is that by appellant's delay in bringing suit it has lost its right to damages and that it is now entitled only to an injunction against the future use of its trade-mark on lamps." Citing Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713. In the case at bar plaintiff has waived its right to damages. Defendant does not claim that it would have avoided the use of the word "Stronghold" in its corporate name if plaintiff had complained at an earlier date. Defendant adopted its new corporate name with full knowledge of plaintiff's mark. The situation is somewhat similar to that in National Circle, Daughters of Isabella v. National Order of Daughters of Isabella, 2 Cir., 270 F. 723, at page 734, where the court said: "If damage is suffered by the defendant corporation by being compelled now to change its name and cease its infringement on the plaintiff's name, the loss arises out of the defendant's own folly in deliberately incorporating under a name already in use."

The plaintiff is entitled to injunctive relief. The judgment for defendant is reversed.