**NATIONAL VAN LINES, INC., Plaintiff,**

v.

**Alfred E. DEAN, Dean Van Lines, Inc., John Mechanic, and National Van Lines, a Wisconsin corporation, Defendants.**

**No. 57 C 665.**

United States District Court
N. D. Illinois, E. D.

March 9, 1960.

Kenneth T. Snow, Chicago, Ill., for plaintiff.

Bair, Freeman & Molinare, Chicago, Ill., for defendant.

CAMPBELL, Chief Judge.

Plaintiff, National Van Lines (hereinafter referred to as "National"), an Illinois corporation, brings this action for damages and injunctive relief against defendants, Dean Van Lines, Inc. (hereinafter referred to as "Dean"), a California corporation, and Alfred E. Dean, President of Dean Van Lines, and a California citizen (On July 18, 1957, plaintiff dismissed the action as to defendants, John Mechanic and National Van Lines of Wisconsin), for alleged infringement of plaintiff's service marks, Registrations No.˙548,018 and No. 563,950, for unfair competition and for contempt of an injunction issued by the District Court for the Southern District of California in previous litigation between the parties (Plaintiff's Exhibits Nos. 1 and 2). The cause having come on for trial upon a stipulation of facts, exhibits and briefs of the parties is presently before me for disposition.

A summary of the factual background leading up to the present litigation may be found in National Van Lines v. Dean, 9 Cir., 237 F.2d 688, at pages 690, 691:

"Appellant, National Van Lines, Inc., is an Illinois corporation. It engages in the nationwide business of moving household goods by motor van. The forerunner of the present company was started in 1928, under the name 'National Shippers & Movers.' In about 1930, the company began using this name, placed horizontally on a shield with vertical stripes, as a service mark.

"In June, 1934, the business was incorporated under the name 'National Van Lines, Inc.' The service mark was then changed to its present form. It shows the new name in blue or black, between heavy red or black lines, across the middle of a shield. The upper part of the shield is in blue or black, across which the words 'National Wide' appear in white. The lower part of the shield, outlined in blue or black, consists of red and white, or black and white, vertical stripes.

"Late in October, 1944, appellant and appellee, Alfred E. Dean, entered into negotiations looking to the

execution of an agency contract. In contemplation of this arrangement, Dean began a local moving van business in the San Diego Bay area, under the name 'National Van & Storage.' The contract was signed on November 7, 1944. Under its terms, appellee undertook to book interstate shipments for appellant on a commission basis. The contract was signed on November 7, 1944. Under its terms, appellee undertook to book interstate shipments for appellant on a commission basis. The business so booked was to be handled by appellant under the latter's name.

"Appellee, who was permitted to continue his local moving business, agreed in this contract that he would not use the names 'National Van', 'National Van Lines,' or 'National Van Lines, Inc.' As soon as the contract was executed, Dean accordingly changed his firm name to 'National Transfer & Storage Co.'

"On May 17, 1948, appellant filed an application for the registration of its service mark, described above, on the principal register of the United States Patent Office. The application states that no claim is made to the words 'Nation Wide' and 'Van Lines, Inc.' apart from the mark as shown. This mark was registered on September 11, 1951. On January 4, 1952, appellant filed a similar application to register the service mark 'National Van Lines' without the shield. This was registered on September 9, 1952.

"In November, 1949, Dean adopted the service mark which, appellant asserts, infringes upon the latter's mark, constitutes unfair competition, and amounts to a breach of the agency contract. In Dean's mark, the words 'National Transfer & Storage,' in blue or black, are superimposed across the middle of an outline map of the United States. The word 'National' is emphasized by the use of shaded block letters. The upper part of the outline map is shown in light blue or gray. The lower part consists of red and white, or black and white, vertical stripes, across which the words 'Coast to Coast via Motor Van' appear.

"The agency contract was canceled by Dean on February 20, 1950. He immediately changed the character of his business from that of a local mover to a nation-wide mover. His business increased from a four-van moving business, grossing $8,900 in 1944, to an eighty-three-van nationwide business, grossing $688,000 in 1951. Thus, appellant and appellee became, and now are, direct nationwide competitors."

Six months prior to the trial in the District Court for the Southern District of California, Dean began to identify its moving business by the name "Dean Van Lines" and had discontinued completely the use of the name "National Transfer & Storage Company" prior to the issuance of the injunction referred to above and has not used the name "National" in any form to identify its services since the injunction issued (Stipulation, paragraph 16).

The judgment of the District Court for the Southern District of California upon mandate from the Court of Appeals for the Ninth Circuit provides in part as follows:

"5. Defendant committed unfair competition by using the service mark, the principal characteristic of which is the use of vertical stripes in red and white, or black and white, below a name which begins with the word 'National' to identify services comprising moving household goods by motor van.

"6. Defendant, his agents, servants, employees and all those in concert with him, are hereby permanently enjoined and restrained from:

"a. Conducting business or rendering services related to or comprising moving household goods by motor van, under the trade name or service mark, the principal charac-

teristic of which is the use of vertical stripes in red and white, or black and white, below a name which begins with the word 'National' or any colorable imitation thereof.

"b. Otherwise competing unfairly with plaintiff in rendering services comprising moving household goods by motor van."

Presently Dean Van Lines, Inc. identifies its services by a mark consisting of the name "Dean Van Lines" superimposed on an outline map of the United States, the map carrying alternate red and white stripes or black and white stripes in the lower portion below the name (Reproduction page 4 of the Stipulation). Dean Van Lines also uses an ancillary mark, STO–PAK, superimposed on an outline map of the United States, the map carrying alternate red and white stripes, or white and black stripes in the lower portion below the name (Reproduction page 5 of the Stipulation).

National Van Lines, a Wisconsin corporation (hereinafter referred to as "National-Wisconsin"), named in the complaint as co-defendant along with its chief executive officer, John Mechanic, was at the commencement of this suit, the agent of Dean and was permitted to use Dean's service marks. National-Wisconsin, and its predecessor in title, has conducted a moving business in the States of Wisconsin and Illinois with moving vans bearing the name "National Van Lines" since 1930 and during its agency agreement with Dean used moving vans bearing its name and accompanied by the Dean service mark as reproduced on pages 4 and 5 of the Stipulation. It also caused advertisements containing its name and the Dean service mark to be published in the Milwaukee Telephone Directory during its agency agreement with Dean (Stipulation, Exhibit K).

The agency agreement between National-Wisconsin and Dean was cancelled on May 20, 1957, and subsequently National purchased the trademark rights of National-Wisconsin and dismissed the present action as to that corporation and its chief executive officer on July 18, 1957.

It is agreed by the parties that there were instances of actual confusion between National and National-Wisconsin while National-Wisconsin was Dean's agent.

The issues are as follows:

(1) Has plaintiff established trademark infringement by the defendants for which this Court will grant relief?

(2) Has plaintiff established a contempt of the previous injunction awarded against these defendants by the United States District Court for the Southern District of California for which this Court will grant relief?

(3) Has plaintiff established a violation of unfair competition for which this Court will grant relief?

I now consider the first issue.

Title 15 U.S.C.A. § 1114(1) provides:

"Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; or (b) reproduce, counterfeit, copy, or colorably imitate any such mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles, or advertisements intended to be used upon or in connection with the sale in commerce of such goods or services, shall be liable to a civil action by the registrant for any or all of the remedies hereinafter provided in this chapter, except that under subsection (b) of this section the registrant shall not be entitled to recover profits or damages unless the acts have been

committed with knowledge that such mark is intended to be used to cause confusion or mistake or to deceive purchasers."

Title 15 U.S.C.A. § 1127 defines "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from a registered mark", while "colorable imitation" is defined as including "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive purchasers".

In regard to trademark infringement, the test is stated as follows in Independent Nail & Pack. Co. v. Stronghold Screw Prod., 205 F.2d 921, at page 924:

"Whether there is an infringement of a trademark does not depend upon the use of identical words, nor on the question as to whether they are so similar that a person looking at one would be deceived into the belief that it was the other; but it is sufficient if one adopts a tradename or a trademark so like another in form, spelling, or sound that one, with a not very definite or clear recollection as to the real trademark, is likely to become confused or misled. * * * A side by side comparison is not the test for determining confusing similarity of trademarks."

In G. D. Searle & Co. v. Chas. Pfizer & Co., 7 Cir., 265 F.2d 385, at pages 388, 389, it is stated:

"We must determine the purchasing public's state of mind when confronted by somewhat similar trade names *singly* presented.

"Since it is the effect upon prospective purchasers that is important, the conditions under which they act must be considered.

     *     *     *     *     *

" '* * * this court has repeatedly held that the public ought not to be required to dissect and analyze trademarks in order that confusion and deception might be avoided.' "

It is clear that although it is proper to consider the names as a whole, the names should not be examined with a microscope to detect minute differences. Syncromatic Corp. v. Eureka Williams Corp., 7 Cir., 174 F.2d 649. Also, to constitute infringement, it is not necessary that the defendant appropriate the whole of plaintiff's mark, and the imitation need only be slight if it attaches to the salient feature of plaintiff's mark. Independent Nail & Pack. Co. v. Stronghold Screw Prod., supra. The court should also consider the form, spelling and sound of the marks in question, Northern Warren Corp. v. Universal Cosmetic Co., 7 Cir., 18 F.2d 774; whether the products involved are the same or similar, Benrose Fabrics Corp. v. Rosenstein, 7 Cir., 183 F.2d 355; whether the products are sold to the same prospective customers, Independent Nail & Pack. Co. v. Stronghold Screw Prod., supra; and whether the conditions under which the products are purchased are the same or similar. Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 179 F.2d 265.

It has also been pointed out in Life Savers Corp. v. Curtiss Candy Co., 7 Cir., 182 F.2d 4, at page 8:

"A new competitor is not held to the obligations of an insurer against all possible confusion. He is not obligated to protect the negligent and inattentive purchaser from confusion resulting from indifference. * * * Instead they are required only to mark or designate them in such manner that purchasers exercising ordinary care to discover whose products they are buying will know the truth and not become confused or mistaken."

Under the law as set out above, I find from Paragraph 9 and Exhibits F, G, H, I, J, and K of the Stipulation of Facts, that defendant's marks do not so colorably imitate plaintiff's registered marks as to cause confusion or mistake or to deceive purchasers as to the source of origin of the services.

As stated in National Van Lines v. Dean, supra, 237 F.2d at page 693:

"(National) is not seeking to protect the word 'National' or vertical stripes, considered separate, as service marks. It is the composite of the word plus the stripes which (National) here defends. * * * That composite mark, in our opinion, is sufficiently distinctive to deserve judicial protection."

In finding that the use by Dean of a service mark utilizing the word "National" in connection with vertical stripes is likely to confuse and deceive, causing members of the public to mistake such mark for the prior mark of National, the Court of Appeals for the Ninth Circuit specifically stated in footnote 6 that this ruling does not apply to the service marks presently before this Court.

An examination of the National mark as shown in Exhibit F and Paragraph 9 of the Stipulation, and Dean's presently used marks as reproduced in Paragraph 9 of the Stipulation reveals that the only common characteristic to the respective marks is the use of vertical stripes in either black and white or red, white and blue.

I find that the stripes of plaintiff's composite mark as shown in Exhibit F and Paragraph 9 of the Stipulation apart from the mark as a whole have not acquired a secondary meaning and that plaintiff has no exclusive right in the use of stripes per se in connection with moving services.

As to the first issue, I find that defendants have not infringed upon the trademark rights of plaintiff by either the presently used Dean service marks as reproduced in Paragraph 9 of the Stipulation or by the use of National-Wisconsin, as agent of Dean, of the Dean service marks in conjunction with its own name reproduced in Exhibit K of the Stipulation.

As to the second issue, I find that neither defendant Alfred E. Dean nor defendant Dean have violated the injunction issued by the United States District Court for the Southern District of California in Civil Action 14783–T.

I now consider the third issue.

■ The test for unfair competition under Illinois law is whether the adoption and use of a name by defendant is likely to cause confusion in the trade as to the source of products (services) or is likely to lead the public to believe that the defendant is in some way connected with plaintiff. Independent Nail & Pack. Co. v. Stronghold Screw Prod., supra.

■ I find that the use of defendants of the Dean service marks as shown in Paragraph 9 and Exhibits F, G, H, I, J, and K of the Stipulation is not likely to cause confusion as to the source of services and is not likely to lead the public to believe that defendants are in some way connected with plaintiff. Accordingly, I find no unfair competition.

Plaintiff's prayer for injunction, accounting and damages is denied. Plaintiff shall bear the costs of this action.

The foregoing shall act as findings of fact and conclusions of law as required by Title 28 U.S.C. Rule 52(a), F.R.Civ.P.