**SHAW–BARTON, INC., Plaintiff-Appellee,**

v.

**JOHN BAUMGARTH CO., Inc., Defendant-Appellant.**

**No. 13697.**

United States Court of Appeals Seventh Circuit.

Jan. 3, 1963.

Rehearing Denied March 6, 1963.

Morris Spector, A. Bradley Eben, Irving H. Goldberg, Chicago, Ill., for defendant-appellant.

Frank J. Foley, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This suit was instituted under the federal trademark statutes, 15 U.S.C. § 1051 et seq., by plaintiff, Shaw-Barton, Inc., charging defendant, John Baumgarth Co., Inc., with infringement of plaintiff's registered trademark "Homemakers" as employed on calendars, and asking for an injunction and recovery of plaintiff's damages and defendant's profits resulting from the unlawful infringement.

The District Court found the trademark valid and infringed and decreed

that an injunction should issue against defendant. The judgment provided for the recovery of all damages sustained by plaintiff including all profits realized by defendant from its infringing sales. From the judgment defendant appeals.

Plaintiff's trademark was registered on May 19, 1942. The calendar to which plaintiff has applied its trademark consists of twelve sheets, one for each month, each sheet having at its top a large, full-color picture. There is a space below each picture for the advertiser's name and message; below that are the calendar dates for the current month, with space adjoining each date for such notes as the user might wish to insert. On the back of each sheet are items of information that would be of particular interest to one whose occupation is household and family management.

Plaintiff began to sell its "Homemakers" calendars in 1941, but no notice that the mark was registered was printed on any calendar until several years after this suit was filed.

In 1948, defendant began selling calendars identical in format with plaintiff's. The sample calendars, which defendant distributed to its jobbers to be exhibited by the jobbers' salesmen when soliciting orders from prospective advertisers, bore in the sample ad space below the picture, this notation:

This homemakers calendar
is a calendar out of the ordinary
will be retained the full year
and appreciated as a gift

The words "This homemakers calendar" were printed in type two and one-half times the height of the rest of the words. During the period 1949 to 1953, orders were obtained by the jobbers' salesmen by means of the samples bearing the word "Homemakers." These orders were sent to defendant who printed the appropriate advertiser's name in the ad space on each of the twelve sheets in place of the statement "This home-

makers calendar, etc." The calendars were then shipped to the advertisers minus the word "Homemakers;" they did, however, carry the name "Modern home calendar." After 1954, defendant's calendar samples carried the further identification "Modern homemaker calendar" just below the name of the month.

The evidence clearly shows that defendant was informed of plaintiff's trademark claims at least as early as 1950, but continued to use the identifying markings described above. Plaintiff acknowledges that defendant has the right to copy the format of plaintiff's calendars and makes no claim of exclusive rights thereto.

The trial judge made no finding that the term "Homemakers" as applied to calendars had acquired a secondary meaning. In the absence of such a finding, we may assume that none existed. Wilhartz v. Turco Products, 164 F.2d 731 (7th Cir. 1947). There was no evidence of likelihood of confusion among the purchasing public. Though confusion may be inferred under certain circumstances, it is of little consequence if it results from the use of identifying marks that lie in the public domain and which have acquired no secondary meaning.

The question thus presented is the correctness of the District Court's determination that "[p]laintiff's trademark 'Homemakers' is a good and valid trademark. * * *"

We hold that the word "Homemakers," when applied to calendars of the type involved in this suit, is a noun,[1] descriptive of that class of individuals toward which the design and proposed use of the product is oriented; that the class is total in the sense that it is not effectively limited to less than the whole —which limitation would render it less descriptive and more of a fanciful designation, arbitrarily selected by the applicant (see Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U.S. 251, 257,

1. Websters Third New International Dictionary (unabridged, 1961), contains the following definition of homemaker:

homemaker, n. 1: one that makes a home: one whose occupation is household and family management. * * *

36 S.Ct. 269, 60 L.Ed. 629 (1916)); that the mind readily and immediately recognizes the association between the product and the class of users (see Bonne Bell, Inc. v. Lanolin Plus Cosmetics, 202 F.2d 790, 40 CCPA 891 (1953)); and therefore, it is not capable of exclusive appropriation as a trademark in the absence of a showing that it has acquired a secondary meaning.

It is well established that where descriptive words are used, the presumption of validity attaching to a registered trademark may be easily overcome. John Morrell & Co. v. Reliable Packing Co., 295 F.2d 314 (7th Cir. 1961).

The fact that here we are confronted with a word that is descriptive of the class of users for which the product is primarily and particularly oriented, rather than a word that is descriptive of the inherent qualities or characteristics of the product itself, distinguishes those cases that deal with the latter category, e. g., Independent Nail & Pack. Co. v. Stronghold Screw Prod., 205 F.2d 921 (7th Cir. 1953); General Shoe Corp. v. Rosen, 111 F.2d 95 (4th Cir. 1940).

The controlling statute, 15 U.S.C. § 1052(e), precludes registration of any mark that is descriptive "when applied to the goods" on which it is to be used. When the trademark, "Homemakers" (with or without a hyphen), is juxtaposed with the calendar in question, the mind readily and immediately assents to the association as being appropriate, and recognizes without reflection the identity of the group or class for whose use the product was intended. In this connection, it is enlightening to note that plaintiff also sells calendars entitled a "Catholic Church" calendar, a "Jewish Home" calendar, a "Protestant" calendar, and a "Lutheran Church" calendar. Plaintiff concedes that these names would not be subject to being trademarked. Though the word "carpenter," by itself, does not indicate any particular context in which we might use it, nevertheless, it must be apparent that, in the absence of some secondary meaning, no one should be permitted to trademark the

word in such forms as "carpenter's" ladders, "carpenter's" hammers, "carpenter's" saws, etc. We believe the word "Homemakers" as used on calendars of the type here in question falls in the same category, and hence it ought not be granted trademark protection.

The trial judge's finding that the word "Homemakers" is not descriptive is thus clearly erroneous. Accordingly, the judgment of the District Court is reversed.

HASTINGS, Chief Judge (dissenting).

I respectfully dissent. I cannot agree that the district judge " * * * [M]ade no finding that the term 'Homemakers' as applied to calendars had acquired a secondary meaning."

It is apparent to me that the opinion of the majority is based largely upon the assumption that the trial judge made no finding as to secondary meaning and, therefore, the assumption is warranted that none existed.

The trial judge gave a good description of plaintiff's calendars saying that "[T]he testimony reveals that plaintiff's calendar featuring the word 'HOME-MAKERS' consists of a careful assembly of attractive pictures, editorial material of interest to a housewife, such as recipes, household and gardening hints, convenient place for notations of telephone numbers and memoranda, budget advice and charts, and a place for the advertisement name and data."

Plaintiff sold over 11,500,000 "HOME-MAKERS" calendars from 1941 to 1959. In the year 1948, plaintiff sold nearly one million "HOME-MAKERS" calendars. It was in this year that defendant began selling calendars identical in appearance and makeup with plaintiff's calendars.

The trial court found "[T]here was testimony of several witnesses, purchasers of calendars, identifying the word 'HOME-MAKERS' with plaintiff's product * * * and that in the purchase of calendars they identified them by the name 'HOME-MAKERS.' "

## 170

It is true the trial court did not find in so many words that a secondary meaning attached to the word "HOME-MAKERS" for wall calendars; but the Court did specifically find from the testimony of witnesses who were purchasers of calendars that they identified "HOME-MAKERS" with plaintiff's product. In my view, this sufficiently satisfies the requirements of the doctrine of secondary meaning. We reached a similar conclusion in a like situation in G. Leblanc Corporation v. H. & A. Selmer, Inc., 7 Cir., 310 F.2d 449 (1962).

I also agree with the finding of the trial court "[W]hile at first blush the word 'HOME-MAKERS' in apposition to the word calendar might be deemed descriptive thereof, the Court has concluded after a careful study of the precedent, that it is not 'descriptive in the trademark sense so as to invalidate the registration.'"

The district court, in a carefully considered memorandum decision on the merits of this case, found support for its holding in Independent Nail & Pack. Co. v. Stronghold Screw Prod., 7 Cir., 205 F.2d 921, 925 (1953), cert. denied, 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391. I think its reliance on this case was well founded. It has long been recognized as the law of this circuit and has been cited with approval many times by this and other courts. The majority opinion seeks to distinguish it from the case at bar. I cannot agree that it is distinguishable.

Finally, after seeking refuge in our holding in Wilhartz v. Turco Products, 7 Cir., 164 F.2d 731 (1947) on the issue of secondary meaning, the majority opinion notes "[T]here was no evidence of likelihood of confusion among the purchasing public." The relevance of "likelihood of confusion" usually is found on issues of infringement and unfair competition. I fail to see its application to the issue of validity of plaintiff's trademark which is the question treated in the majority opinion.

I would affirm the judgment of the district court.