**HOMEMAKERS HOME AND HEALTH CARE SERVICES, INC. (formerly Homemakers, Inc.), Appellant,**

v.

**CHICAGO HOME FOR the FRIENDLESS, Appellee.**

**CHICAGO HOME FOR the FRIENDLESS, Appellee,**

v.

**HOMEMAKERS HOME AND HEALTH CARE SERVICES, INC. (formerly Homemakers, Inc.), and Homemakers—North Shore, Inc., Appellants.**

No. 72–1674.

United States Court of Appeals, Seventh Circuit.

Argued May 29, 1973.

Decided Sept. 11, 1973.

Richard E. Alexander, Chicago, Ill., for appellants.

David C. Hilliard, Chicago, Ill., for appellee.

Before FAIRCHILD, PELL and STEVENS, Cricuit Judges.

STEVENS, Circuit Judge.

Plaintiff-Appellant's complaint sought a declaratory judgment establishing the validity of its registration of the service mark "HOMEMAKERS" used in connection with health, family and household service—namely, nursing, companionship, visiting, housekeeping, domestic help, maids, cooks and home maintenance.[1] The district court held that the term was merely descriptive and entered judgment directing the Patent Office to cancel the registration in accordance with the provisions of 15 U. S.C. § 1119.

Defendant-Appellee's counterclaim alleged that the word "homemakers" had achieved secondary meaning in the Chicago area as a part of defendant's trade name, and that plaintiff's use of that word constituted unfair competition. The district court held that the proof sustained the allegations of the counterclaim, enjoined plaintiff from using the word "homemakers" as a part of its trade name in Cook County, and ordered an accounting of profits.

We think neither party is entitled to a monopoly in the use of the term "homemakers." Accordingly, we affirm the judgment for the defendant on the complaint and reverse the judgment on the counterclaim.

## I.

*The Parties.*

Plaintiff, "Homemakers Home and Health Care Services, Inc.," formerly "Homemakers, Inc.," is in business for profit. Defendant, "Chicago Home for the Friendless," is a charitable concern. We shall use the term "Homemakers, Inc." to refer both to the plaintiff and, where appropriate, to its franchisee, "Homemakers—North Shore, Inc.," a corporation which has also been named as a counterdefendant. We shall refer to defendant as "Chicago Home."

The business now operated by Homemakers, Inc. was started by a Mr. and Mrs. Bailing who were furnishing temporary nursing and housekeeping personnel in Joliet, Illinois, in the summer of 1964. They incorporated as "Homemakers, Inc." on March 30, 1965. They supplied members of the public with nurses, nurses' aids, housekeepers, cooks, and similar domestic personnel on a temporary basis. The customers paid Homemakers, Inc. for these services; the temporary personnel, who were employees of Homemakers, Inc., received their wages from the company.

In 1965 Homemakers, Inc. began a program of franchising. In January, 1966, it applied for a registration of "HOMEMAKERS" as a service mark, and in October of 1966 advertised nationally that its franchises were available. The registration issued without opposition on March 7, 1967. A licensee opened an office in Evanston, Illinois, in early 1969; later that year Homemakers, Inc. merged into the Upjohn Company. At trial it offered to prove that its promotional expenses were approximately $348,000 in 1970, $623,000 in 1971, and were budgeted at $750,000 for 1972; it also offered to prove that sales by Homemakers, Inc. throughout the United States in 1971 were in excess of eight million dollars; and finally, that 34 franchisees in various parts of the country had been granted licenses to use the mark "HOMEMAKERS."

Chicago Home was chartered as a not-for-profit corporation in 1859. Its two principal activities are providing foster care services and homemaker services. The latter involve the placing of trained welfare persons in homes on a charitable basis. The family makes no

---

[1]. Registration No. 825,460 dated March 7, 1967, pursuant to Application No. 236,257 filed January 12, 1966.

payment for this help and the homemaker works under the supervision of a trained social worker. These services are supported by direct charitable contributions and indirectly by grants from various Community Chests in the Chicago metropolitan area. In 1962 Chicago Home opened a district office in Oak Park; the office is described as "West Suburban Homemaker Service." From 1966 to 1971 several other branch offices in the Chicago area have used similar geographic designations. Chicago Home's expenses incurred in the provision of homemaker services have grown from $100,000 in 1962 to over $700,000 in 1971. In 1967 it provided 18,860 days of homemaker services.

The two litigants are not competitors. The customers of Homemakers, Inc. are not the recipients of charity; the families serviced by Chicago Home cannot afford the services of Homemakers, Inc.

## II.

*The Complaint.*

■ We have no doubt that the district court correctly concluded that "homemakers" is merely a descriptive term.

■ Plaintiff argues that the court erred by not requiring defendant to adduce evidence to overcome the presumption of validity established by the registration. The court was entitled, however, to rely on the evidence contained in plaintiff's case-in-chief.[2]

■ In view of the fact that the mark consists of nothing more than one descriptive word, the presumption of validity "may be easily overcome."[3] The two reasons for refusing to protect marks which are merely descriptive apply with special force to one word terms. Since there is the greatest likelihood that such terms will form a part of the trade name used by competitors, there is a corresponding probability that the word will not unambiguously advise the public of the source of the goods or services. Moreover, monopoly rights in a single common word, as opposed to combinations of different words, involve a much more substantial infringement upon common speech.[4]

■ Plaintiff argues alternatively that if the court had accepted its offer of proof, secondary meaning would have been demonstrated. We question that conclusion but reject the argument for a different reason. The registration of the mark in 1967 was not issued pursuant to 15 U.S.C. § 1052(f);[5] thus, it was not granted on the theory that the term had acquired any secondary meaning. The subsequent acquisition of secondary meaning may entitle the owner to trade name protection but cannot retroactively establish the registrability of a mark that should not have been accepted for registration in 1967. For the rights

---

2. For example, the registration itself is for "household services" such as "housekeeping"; plaintiff advertises that "services are to be provided when mother is ill or away"; and the original articles of incorporation describe this service as "homemaking service."

3. See Shaw-Barton, Inc. v. John Baumgarth Co., 313 F.2d 167, 169 (7th Cir. 1963). In that case a different application of the term "homemakers" was also held descriptive and not entitled to trademark protection. See also John Morrell & Co. v. Reliable Packing Co., 295 F.2d 314, 316 (7th Cir. 1961).

4. Cf. E. F. Drew & Co. v. Pam Industries, Inc., 299 F.2d 777, 779 (7th Cir. 1962).

5. That section provides:
"(f) Except as expressly excluded in paragraphs (a)–(d) of this section, nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Commissioner may accept as prima facie evidence that the mark has become distinctive, as applied to the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years next preceding the date of the filing of the application for its registration."

stemming from that registration, if it were valid, would entitle the owner to protection from the date of registration.[6]

It is perfectly clear from the record that the term "homemakers" had not acquired a secondary meaning which would have supported registration of a descriptive term in 1967. Since plaintiff's offer of proof related to subsequent developments, the proffered evidence would not save the registration.

### III.

*The Counterclaim.*

■ Although the counterclaim is based on several different laws,[7] all the actions are based on the common proposition that counter defendant's use of the term "homemakers" in its name misleadingly implies that Chicago Home is the source of the services provided. In other words, Chicago Home claims the term as a trade name. In proving its counterclaim, Chicago Home must, of course, accept the consequences of the position it persuaded the court to adopt in the principal case. We therefore start with the proposition that "homemakers" is a descriptive term. Chicago Home may not claim the description "homemakers" as a trade name unless it proves that the term has acquired a secondary meaning which identifies Chicago Home as the source of the services in question. Jewel Tea Co. v. Kraus, 187 F.2d 278, 283 (7th Cir. 1950). Although the district court ruled that Chicago Home was entitled to trade name protection, we find insufficient evidence to establish the proposition that the term "homemakers" identifies Chicago Home as the source of homemaking services.

The word has been used by Chicago Home to describe the services it provides,[8] and also has been used as a part of a longer geographic name for certain local offices.[9] Neither of these types of use remotely justifies the conclusion that the term has acquired the requisite secondary meaning to support the common law right to protection of a trade name. The record shows that other parties, such as the "Homemakers Service Department in the Public Assistance Division of the Cook County Department of Welfare" and the "National Council for Homemaker Service" make a comparable use of this descriptive word. The word itself does not identify Chicago Home as a source.

We therefore affirm the judgment of the district court directing cancellation of plaintiff's registration and reverse the judgment granting relief to Chicago Home on the counterclaim.

---

6. The United States Court of Customs and Patent Appeals has held that if the validity of a registration depends on the secondary meaning of the mark, registrability "must be determined on the basis of facts as they exist at the time when the issue of registrability is under consideration." McCormick & Co. v. Summers, 354 F.2d 668, 674, 53 CCPA 851 (1966). See also Roselux Chemical Co. v. Parsons Ammonia Co., 299 F.2d 855, 863, 49 CCPA 931 (1962).

7. The district court found violations of the common law Illinois, 15 U.S.C. § 1125(a), 121½ Ill.Rev.Stat. §§ 311–318, and 140 Ill. Rev.Stat. § 22.

8. Thus, for example, Chicago Home's 1967 annual report includes statistics describing "the amount of homemaker service provided by our Agency," but the names which are featured in the report are the corporate name and the phrase "child and family services."

9. Thus, for example, the name "West Suburban Homemaker Service" is used as one of Chicago Home's telephone listings.